The Rock River Paper Mill Company and William H. Minot v. Anna Louisa Fisk.

*Wills—Construction—"Dying without issue"—Execution of power.*

Testator by his will provided as follows: "I give and bequeath to my beloved son Francis, when he arrives at the age of twenty-one years, three thousand dollars and one thousand dollars annually thereafter until he arrives at the age of twenty-five years; and if at that time he shall have used what he has received, as above stated, in a judicious frugal manner, and not wasted and squandered it in the opinion of my executors hereunto appointed, he shall then receive ten thousand dollars more; and if at the age of thirty years or sooner, if in the opinion of my said executors, he shall have managed and

will continue to do so, what he has already received, in a judicious frugal manner, he shall receive fifteen thousand dollars more; and if at the age of thirty-five years or sooner, if in the opinion of my said executors, he shall have and will still continue to use what he has received as before stated in a frugal, economical and judicious manner, he shall come into full possession of all my estate, personal and real, not otherwise disposed of by this will or otherwise. But if after having received ten thousand dollars at the age of twenty-five years he shall have squandered and wasted what he has already received, or in the opinion of said executors he will waste and squander what he receives, he shall thereafter receive but one thousand dollars annually, and all my estate, real and personal, not otherwise disposed of shall go to the legal issue or children of my beloved son Francis; but in case he dies without said issue or children, then in that case it shall go to my legal heirs and representatives equally according to law," etc. He then appointed five persons "as executors to carry out the foregoing will, and they are to have the control and direction of my beloved son Francis, during his minority, and the above-named executors, a majority of them, are authorized to choose their own successors in office."

*Held,* that the will did not convey the estate to the executors named in trust, but only made them executors with certain additional powers, under which, in certain contingencies, the estate might be made to pass from the son to others. Until the contingencies happened the estate would not pass to the son, who was heir-at-law.

Of the five executors named only one qualified. He acted as sole executor for many years, and died without completing a settlement. The annuity of one thousand dollars was paid to Francis till he was of the age of twenty-four, but no other payments were made to him. He died without issue at the age of twenty-five years and three months, leaving a will by which his wife was made devisee of his estate. The acting executor never determined whether the conduct of Francis was satisfactory, or undertook to execute the power given by the will.

*Held;* that assuming the power given by the will to be valid, it could only be executed by the five persons named, or by the number kept good as by the will provided; and that it could only be executed after the payments to be made to the son at and before the time of his reaching the age of twenty-five had been actually made. Therefore in this case the power to pass the estate from the son could never have been executed.

The provision for the son dying without issue, means his dying without issue after it had been determined by the executors as provided by the will, that the conduct and promise of the son are unsatisfactory; and that determination having never been made, and the son remain-

ing owner at the time of his death, the estate passed under the will of the son to his devisee.

Error to Calhoun.   Submitted Oct. 5–6.   Decided Oct. 27.

EJECTMENT.   Defendants bring error.   Affirmed.

*L. P. Perkins, John C. Patterson* and *William H. Brown* for plaintiff in error.   It is not essential to a trust under a will that there shall be words of direct gift if there is a declaration of an intent that specified persons shall exercise a control over the property to which the legal estate is necessary: Fletcher on Trusts 1–9; Lewin on Trusts 234; *Tenny v. Moody* 3 Bing. 3; *Markham v. Cooke* 3 Burr. 1684; *Trent v. Hanning* 1 B. & P. (N. S.) 120; *Doe v. Gillard* 5 B. & Ald. 785; *Doe v. Homfray* 6 Ad. & El. 206; where only one of several executors qualifies he may exercise all the powers conferred upon all nominated in the will, even as trustees: *Leggett v. Hunter* 19 N. Y. 445; *Davoue v. Fanning* 2 Johns. Ch. 252; *In re Stevenson* 3 Paige 420; *King v. Donnelly* 5 Paige 46; *In re Van Schoonhoven* id. 559; *Burton v. Tunnell* 5 Harr. (Del.) 182; *Britton v. Lewis* 8 Rich. Eq. 271; *Treadwell v. Cordis* 5 Gray 341; *Taylor v. Morris* 1 Comst. 341; 2 Shep. Touch. (1st Am. ed.) 449, 450; 21 Hen. viii. c. 7; *Zebach's lessors v. Smith* 3 Binney 69; Gary's Prob. Law § 250; *Clarke v. Parker* 19 Ves. 19; *Hawkins v. Kemp* 3 East 410; *Flanders v. Clark* 1 Ves. 9; *Niles v. Stevens* 4 Den. 399; where a testator makes it his executor's duty to execute a power and gives him a sufficient interest to enable him to discharge it, the executor becomes a trustee and has no discretion whether he will exercise it or not, and his negligence will not be allowed to disappoint the interests of the *cestui que trust:* Comp. L. § 4164; *Richardson v. Chapman* 5 Bro. P. C. 400; *Brown v. Higgs* 8 Ves. 561; *Miller v. Meetch* 8 Penn. St. 417; *Gibbs v. Marsh* 2 Met. 243; *Withers v. Yeaden* 1 Rich. Ch. 324; *Gaskell v. Harman* 11 Ves. 489; *Walker v. Shore* 19 Ves. 292; *Elwin v. Elwin* 8 Ves. 554; *Gibson v. Bott* 7 Ves. 94; 2 Redf. Wills 412; as to the

degree of certainty necessary to a trust, see *Philipps v Chamberlaine* 4 Ves. 50; *Mellish v. Mellish* id. 45; *Townsend v. Downer* 23 Vt. 225; *Seale v. Seale* 1 P. Wms. 290; *Reeves v. Baker* 18 Beav. 372; *Macnab v. Whitbread* 17 Beav. 299; *Gilbert v. Chapin* 19 Conn. 342; *Warner v. Bates* 98 Mass. 274; *Reed v. Reed* 30 Ind. 313; all presumptions are against partial intestacy: *Toms v. Williams* 41 Mich. 552; *Bailey v. Bailey* 25 Mich. 185; equity will not permit a valid trust to fail for want of a trustee: *De Peyster v. Clendening* 8 Paige 310.

*William H. Porter* and *Samuel T. Douglass* for defendant in error. The heir-at-law can be disinherited only by express devise or necessary implication: 1 Jarm. Wills 532; 1 Redf. Wills 435; *Schauber v. Jackson* 2 Wend. 16; *Roosevelt v. Fulton's Heirs* 2 Cow. 72; the latest expression of the testator's purpose in the will, is that which must be given effect: *Bradstreet v. Clarke* 12 Wend. 602; powers to be executed according as those intrusted with it decide upon the deserts of a *cestui que trust*, are discretionary: Hill on Trustees § 495; and courts will not execute or compel the execution of such powers: id. 488, 211, 70; Perry on Trusts §§ 510, 248; *Hull v. Hull* 24 N. Y. 647; if circumstances make it impossible that the power be exercised by those to whom it is so intrusted, it is absolutely gone: Hill on Trustees 226, 488, 495; Perry on Trusts §§ 273, 497; it is presumed that the giver of such a power did not mean it to be exercised by any other than those on whom it was bestowed: *Cole v. Wade* 16 Ves. 44; *Mallet v. Smith* 6 Rich. Eq. 24; and if there were several, the heirs-at-law could not be disinherited except by their unanimous judgment: Hill on Trustees 305, 307; Gary's Probate Law § 759; Comp. L. § 4374 giving any executor who qualifies power to perform such duties as would belong to all, where the others did not qualify, does not apply to discretionary powers: Perry on Trusts § 799; Gary's Prob. Law § 252; *In re Besley's Estate* 18 Wis. 451; *Beekman v. Bonsor* 23 N. Y. 303; *Waters v. Margerum* 60 Penn. St. 39; *Ross v.*

*Barclay* 18 Penn. St. 179; *Dominick v. Michael* 4 Sandf. 374; *Conklin v. Edgerton* 21 Wend. 430; *Roome v. Philips* 27 N. Y. 357; see *Taylor v. Morris* 1 Comst. 341; *Evans v. Chew* 71 Penn. St. 47; *Lantz v. Boyer* 81 Penn. St. 325; *Keefer v. Schwartz* 47 Penn. St. 503; *Brown v. Armistead* 6 Rand. 593; "death without issue," according to the terms of the will in dispute, means such death before the precedent estate vested in possession: *Home v. Pillans* 2 Myl. & K. 15; *Clark v. Henry* L. R. 11 Eq. Cas. 222: *Stones v. Maney* 3 Tenn. Ch. 731; *Pennington v. Van Houten* 4 Halst. Ch. 272; *Wurts ex'r v. Page* 19 N. J. Eq. 366; *Blum v. Evans* 10 S. C. 56; *Vidal v. Verdier* 1 Speer's Eq. (S. C.) 402; *Thackeray v. Hampson* 2 Sim. & Stu. 214; *Monteith v. Nicholson* 2 Keene 719; *Randfield v. Randfield* 8 H. of L. Cas. 224; *Biddle's Estate* 28 Penn. St. 59; *Presley v. Davis* 7 Rich. Eq. 105.

COOLEY, J. This action is ejectment, brought by the defendant in error to recover certain lands which in his life-time belonged to Joseph Sibley. Her title to the land she traces through the will of her late husband Francis M. Sibley, who was the son and only heir-at-law of Joseph Sibley. No question is made that she is entitled to recover provided her husband was seized at the time of his decease.

Joseph Sibley died September 7, 1864, and the questions of law arise upon his will, a copy of which is as follows:

"Know all men by these presents that I Joseph Sibley of the city of Marshall, county of Calhoun and State of Michigan, being of sound mind and memory, do make, publish and declare the following to be my last will and testament:

"*Firstly.* I will that all my just debts and funeral expenses be paid.

"*Secondly.* I give and bequeath to my beloved wife, Hannah, all my household goods and furniture, all my stock, farming tools, wagons, etc., and the use during her life-time of all the lands, buildings and tenements I own at my decease on section number twenty-six, (26,) within the said city of Marshall; and also twenty thousand dollars at once, or one thousand dollars annually, at her election, during her life-time, to be paid her out of my estate.

"*Thirdly.* I will, if it is not done during my life-time, that lot No. 207, Group F, I own in the said city of Marshall cemetery, be enclosed with a suitable iron fence, and a suitable family monument erected therein, under the direction of my beloved wife, should she be living, and if not, under the direction of my beloved son Frank.

"*Fourthly.* I give and bequeath to my beloved son, Francis M. Sibley, when he arrives at the age of twenty-one years, three thousand dollars, and one thousand dollars annually thereafter until he arrives at the age of twenty-five years; and if at that time he shall have used what he has received, as above stated, in a judicious, frugal manner, and not wasted and squandered it, (in the opinion of my executors hereunto appointed,) he shall then receive ten thousand dollars more; and if, at the age of thirty years or sooner, if in the opinion of my said executors he shall have managed, and will continue to do so, what he has already received, in a judicious, frugal manner, he shall receive fifteen thousand dollars more; and if, at the age of thirty-five years, or sooner, if in the opinion of said executors he shall have and will still continue to use what he has received, as before stated, in a frugal, economical and judicious manner, he shall come into full possession of all my estate, personal and real, not otherwise disposed of by this will or otherwise. But if, after having received ten thousand dollars at the age of twenty-five years, he shall have squandered and wasted what he has already received, or in the opinion of said executors he will waste and squander what he receives, he shall thereafter receive but one thousand dollars annually, and all my estate, real and personal, not otherwise disposed of, shall go to the legal issue or children of my beloved son, Francis M. Sibley; but in case he dies without said issue or children, then in that case it shall go to my legal heirs and representatives equally, according to law, except my beloved sister, Roxana Collins and her heirs, who shall receive only five dollars.

"*Lastly.* I give and bequeath to my beloved nephew, James R. Sibley, all the land I own in Fredonia, Calhoun county, Michigan, being the west fractional one-half of section number two, (2,) in said town of Fredonia,—he, the said James R. Sibley, to pay to my estate for all stock and tools, and all other personal property that I have put on to said land, as per my books, at the end of ten years, with interest thereon annually, and

"I hereby appoint Manlius Mann, Horace J. Perrin, William Powell, Charles P. Dibble and Joseph C. Frink as

executors, to carry out the foregoing will, and they are to
have the control and direction of my beloved son, Frank,
during his minority, and the above-named executors, a
majority of them, are authorized to choose their own suc-
cessors in office.

J. SIBLEY.   [L. S.]

Signed and sealed in presence of
    WILLIAM POWELL,
    C. H. M. MANN,
    HARRIETT M. MANN,
    E. CHURCH."

There was a codicil to this will, but its provisions have
no importance in this controversy. The will was admitted
to probate in the county of Calhoun soon after the testator's
death, but all the executors named therein except Horace J.
Perrin refused or neglected to qualify. Perrin qualified,
and letters testamentary were issued to him as sole executor.
He acted as such until January, 1880, when he died without
having settled the estate. The plaintiff below was married
to Francis M. Sibley October 20, 1869, and her husband
died November 30, 1870, without leaving issue. His age
at the time of his decease was twenty-five years and three
months.

The defendant below was in possession of the premises
in dispute under a lease given by Perrin as executor, and
without setting up title in any one, contests the title relied
upon by the plaintiff. The material facts in the case are
few and simple. The annuity of one thousand dollars men-
tioned in the fourth clause of the will was paid for a time,
but it was not paid for the year 1869, nor was the sum of ten
thousand dollars therein directed to be paid to Francis ever
paid. There was no evidence that Perrin had expressed or
indicated any opinion that Francis had or had not managed
or would manage the moneys received or any further pay-
ments in a judicious and prudent manner.

The view taken of the will on the part of the defense
may be summarized as follows:

1. The will devises the estate in trust to the five execu-
tors therein named for the purposes therein indicated. To
enable them to accomplish those purposes it would be neces-

sary that they take the fee, and it must be supposed there-
fore the testator intended them to take the fee, and the
devise must be construed to have that effect.

2. When four of the trustees declined to act, the one who
qualified and acted became sole trustee with all the powers
that would have been possessed by all had all qualified and
acted, and among these powers was the power to judge and
decide whether the conduct and promise of Francis M.
Sibley was such that the estate should vest in him according
to the terms of the fourth clause of the will, or should pass
to others.

3. The fee being thus vested in the trustees or the acting
trustee, Francis M. Sibley could only take under the fourth
clause when a conclusion favorable to him was reached and
announced as was therein contemplated; and no determina-
tion having ever been made in his favor, he never became
entitled to the estate, and on his death without issue it
passed to the collateral relatives.

Of these positions it is manifest the second and third
depend upon the first, and if that is unsound the others are
baseless.

The important question then is, whether this will creates
a trust. A careful examination of its provisions must be
convincing that it does not purport to do so. The persons
named are designated executors only, and no words of grant
or devise are employed to indicate a purpose that any estate
should pass to or be vested in them. If they took any estate
it must have been by implication of law, because of the
impossibility of their exercising the powers conferred with-
out possessing the title. But the only powers conferred
beyond those of executors were that they should have the
"control and direction" of the son Francis, and power to
determine the ultimate disposition of the estate by the judg-
ment they should form and express upon the son's past and
probable future conduct. The first was a power of guard-
ianship to which an interest in the estate was wholly unim-
portant, and the second was just as far from needing, for its
due execution, that the donees of the power should hold the

title. If the power was valid, no conveyance from them was needful to its due execution, for their determination without a grant would be completely effectual.

No trust was therefore created by this will, and the legal title was left to descend according to the rules of law. The law passed it to the son Francis, and there it must have remained until by some subsequent act or event it was passed from him. If there is anything in the will to indicate that the testator had in his mind a different thought, it is the clause that " if at the age of thirty-five years or sooner, if in the opinion of said executors he shall have and will still continue to use what he has received, as before stated, in a frugal, economical and judicious manner, he shall come into full possession of all my estate, personal and real, not otherwise disposed of by this will or otherwise." But the words employed here are perfectly consistent with the supposition that the title was in the son, but that he was for the time excluded from the enjoyment and possession.

It remains to be seen whether the son ever lost the title under the power. But upon this there is no room for question. If an effective power was intended, and not a threat *in terrorem* merely, it was a power to be exercised by five, not by one, and the five were those named or the number kept good by the action of the majority. Moreover the power was to be exercised only after the son had received the sums which were to be paid to him before and at the time of his reaching the age of twenty-five, and these never having been paid, there was never any time when the power could have been executed if all the donees had seen fit to act. The power has therefore become wholly unimportant, and the questions raised on the argument concerning its validity will be passed without consideration.

But it is further said on behalf of the defense that by the will a contingent remainder was limited to the collateral heirs on Francis M. Sibley dying without issue; an event which has actually happened. Provisions of this sort are apt to be complicated with the question whether a dying at any time without issue is what is meant, or whether it is a

dying without issue before or after some specified time or event. And such a question arises here. The primary object in interpreting the will is to reach, if possible, the intent the testator had in mind, and to give effect to it. There is no room here for any doubt that Francis was the primary object of the testator's bounty. But the testator feared that Francis might squander the estate if it was left to his unrestricted control, and he provided a period of probation. If he failed to pass this period of probation to the satisfaction of the donees of the power, the estate might be made to pass to his lawful issue, if any, or in case he should die without issue, then to " legal heirs and representatives." Thus it was neither to go to the issue or to others, to his exclusion, unless it was first determined by the donees of the power, after the probation intended, that he had squandered and would be likely to squander his possessions. The dying without issue which was intended was therefore a dying without issue after the unfavorable determination had been made.

The view we take of the provisions of the will renders quite unnecessary any discussion of authorities. We are of opinion that Francis M. Sibley was seized of the premises in question at the time of his death, and that they passed under his will to the plaintiff.

The judgment of the circuit court will therefore be affirmed with costs and the record remanded.

The other Justices concurred.