JOEL J. PERRIN, ADM'R FOR H. J. PERRIN v. STEPHEN V. R. LEPPER, ADM'R FOR JOEL SIBLEY, ANNA LOUISE FISK, DARIUS PERRIN ET AL.

*Receivers—Final order—Administration.*

1. An order appointing a receiver is final and appealable where it takes from an administrator the entire custody and management of the estate and transfers them to a stranger thereto.

2. An intestate's partner was his administrator, and was charged with confusing the partnership property with his own and seeking to defraud those who were concerned in the intestate estate. The administrator died, and in his turn had an administrator who filed a bill for an accounting and settlement as between the several estates. It did not appear that the partnership estate was being wasted or that there was any hindrance to the investigation of its affairs, and there was evidence to the contrary. *Held,* that there was no ground for appointing, pendente lite and on defendant's prayer, a receiver whose custody should cover the deceased administrator's property.

Appeal from Calhoun. (Hooker, J.) Jan. 28–9.—Apl. 15.

BILL for accounting. Complainant appeals. Reversed.

*Mitchell J. Smiley, J. A. Stull* and *Ashley Pond* for complainant, cited in opposition to the appointment of a receiver, *Morey v. Grant* 48 Mich. 330 ; 2 Barb. Ch. Pr. 659 ; 2 Story's Eq. Jur. § 836 ; 2 Dan. Ch. Pr. 1722 ; High on Receivers §§ 3, 17, 706–8 ; *Chautauque County Bank v. White* 6 N. Y. 252 ; *Anon.* 12 Ves. 4 ; *Middleton v. Dodswell* 13 Ves. 266 ; *Orphan Asylum v. M'Cartee* Hopk. 429 ; *Miller v. Levy* 46 Supr. Ct. (N. Y.) 207 ; *Hamilton v. Accessory Transit Co.* 3 Abb. Pr. 255 ; *Patten v. Accessory Transit Co.* 4 Abb. Pr. 235 : 13 How. Pr. 502 ; *Willis v. Corless* 2 Edw. Ch. 281 ; *Haines v. Carpenter* 1 Wood 262 ; *Pullan v. Cinn. & Chic. R. R.* 4 Biss. 47 ; *Blondheim v. Moore* 11 Md. 365 ; Kerr on Receivers 9 ; *Camabell v. Morrison* 7 Paige 157 ; *Bank of Orleans v. Skinner* 9 Paige 305 ; 5 Watts A. & D. 374 ; *Tomlinson v. Ward* 2 Conn. 396 ; the estate of a deceased partner is not entitled to share in profits realized mainly by the skill of the survivor, though not from his capital : 2 Colly. Part. 345 ; Lindl. Part. 980 ; *Taylor v. Hutchison* 25 Grat. 536 ; *Coudrey v. Gilliam* 60 Mo. 86 ;

*Vyse v. Foster* 4 Eng. 927; neglect to apply for a receiver within a reasonable time waives the right to have him appointed: *Brown v. Chase* Walk. Ch. 43; *Gould v. Tryon* id. 353; *Young v. Graham* 1 Hogan 178; *Jones v. Jones* 3 Meriv. 173; Edw. on Receivers 49; *Kirwan v. Kirwan* 1 Donnelly's Minutes 71; *Tibbals v. Sargeant* 14 N. J. Eq. 449; and the appointment will not be made if the party applying for it is not blameless: 28 L. J. Ch. 169.

*Wm. H. Porter* for defendant Lepper; *Samuel T. Douglass* for defendant Fisk; *Wm. D. Adams, Geo. V. N. Lothrop* and *Jno. J. Speed* for defendant Darius Perrin, and *L. P. Perkins* for the Rock River Paper Mill Company. A receivership is a matter of course where partnership assets are involved in a suit between the partners' representatives: Lindl. Part. 852; *Dayton v. Bartlett* 38 Ohio St. 357; the partnership accounts must be open to inspection: *Merritt v. Dickey* 38 Mich. 45; *Heath v. Waters* 40 Mich. 457; the wrongful commingling of goods with those of another is punishable by forfeiture: Cooley on Torts 53; *Stephenson v. Little* 10 Mich. 433; *People v. Bristol* 35 Mich. 28.

COOLEY, C. J. The order appointing a receiver in this cause took from the complainant the entire custody and management of the property of the estate of Horace J. Perrin of which he was administrator, and transferred it to the person appointed who was a stranger to that estate. It was therefore appealable within the decision in *Barry v. Briggs* 22 Mich. 201, and many other cases decided by this Court. See particularly *Port Huron &c. Ry. Co. v. Jones* 33 Mich. 303; *Taylor v. Sweet* 40 Mich. 736; *Morey v. Grant* 48 Mich. 330. It would be a serious reproach to the law if a litigant could be thus summarily divested of his legal possession and excluded from it pending what might be a long litigation, with no redress whatever except in future restoration when perhaps it had been demonstrated that the original exclusion was unwarranted. But we have said enough in the cases above cited, to show that the law is not subject to this reproach.

We have then to see whether the appointment is justified by the facts, and on this point there is in my mind no doubt

whatever. A very large estate, amounting according to the inventory to nearly three-quarters of a million dollars is taken out of the hands of the administrator and handed over to a stranger without, so far as I can discover in the record, any necessity appearing for it in the litigation, or any advantage to be gained by any one except by the receiver, who would be expected to reap a considerable profit from handling so large an estate.

The principal reason assigned for a receiver is the misconduct of Horace J. Perrin in confusing the property of the partnership of Horace J. Perrin & Co. with his own, and in various devices and shifts to defraud the parties concerned in the estate of his partner. But this strikes me as a very remarkable reason for dispossessing his administrator of the control of the assets of the estate. Receivers are not appointed by way of punishment of parties, and especially of dead parties, for their misconduct; but they are appointed because it is supposed the appointment will tend to the working out of justice in the particular case, and as ancillary to the relief sought in that suit. And if all the misconduct charged against Horace J. Perrin were proved, instead of resting as it does as yet in allegation merely, it could have no bearing on the question whether it is now important to the parties that a receiver be appointed.

There is no reasonable ground for even a suggestion that the property of the Sibley estate commingled with that of Horace J. Perrin amounts to the major part of the estate which the order proposes to turn over to the receiver, or even to anything near a moiety thereof. There is no showing whatever that the property is being wasted by the complainant, or that it is unsafe in his hands, and the contrary is clearly shown. There is no showing that complainant is doing anything whatever to embarrass an investigation of the affairs of the partnership, but on the contrary it is shown that the books and papers of the partnership are put at the service of the defendants and their counsel and open for their examination at all times, and are examined by them to the full extent they may desire; and if any books or papers are concealed

from defendants or their counsel, it is not suggested that the appointment of a receiver will tend in any way to their discovery, and counsel appear now to have the full liberty of search and examination which could possibly be given to a receiver.   There is therefore no showing whatever that the remedy of any party to this suit will in any manner be advanced or rendered more certain or effectual by the appointment of a receiver, and we can conceive of no legitimate advantage to flow to any one from the appointment unless the profits to the receiver can be regarded as such.  If the appointment were to stand, the labor on his part in familiarizing himself with this great estate and in the management of it would be very considerable and his compensation proportionately large; and observation of receiverships warrants us in the conclusion that he would not be likely to demand less than full pay for his services.   The expense would be no conclusive answer to the appointment if any legitimate gain was to accrue to litigants therefrom ; but as already stated I can conceive of none, and the appointment, so far as it concerns property of the Horace J. Perrin estate assumes the appearance of intended punishment inflicted while yet the question of fault remains to be adjudicated.   It seems to be both condemnation and punishment of a party not as yet heard, and I cannot therefore assent to it.

The order of appointment in my opinion should be so restricted as not to apply to any part of the property claimed as belonging to the estate of Horace J. Perrin.   If defendants desire a receivership as to other property there can be no legal objection to it.

CHAMPLIN and SHERWOOD, JJ. concurred.

CAMPBELL, J.   The bill in this case, which was amended after the decree of this Court on demurrer (reported 49 Mich. 347), purports to be filed to procure an accounting and general settlement of several estates and interests alleged to be so connected as to require their disposal together.   A brief preliminary statement is necessary although some fuller references may be required hereafter.

Horace J. Perrin and Joseph Sibley were partners for several years before the death of Sibley in September, 1864. Darius J. Perrin is alleged, and also claims himself to have been a member of their firm. Sibley by his will, which was construed by this Court in the case of *Rock River Paper Co. v. Fisk* 47 Mich. 212, made Horace J. Perrin with several others executors, and gave them jointly some discretionary powers of limiting his only child Frank Sibley in his succession to the estate. Horace J. Perrin was the only executor who qualified, and we held that Frank Sibley succeeded to the entire residue of the estate. Horace Perrin continued during his life to handle all the partnership assets and the Sibley estate assets, and made no distribution or settlement. He died in 1880 nearly sixteen years after assuming control of these assets. Frank Sibley died and left defendant Anna, now Mrs. Fisk, his sole legatee and executrix. Defendant Lepper is administrator de bonis non of Joseph Sibley's estate, and instituted proceedings in the probate court of Calhoun county, which were affirmed by this Court in *Perrin v. Calhoun Circuit Judge* 49 Mich. 342, to compel a disclosure and accounting from complainant in this cause of the matters concerning the Sibley estate. Some other bills have been filed at various times, not necessarily important in the present stage of this controversy.

In January, 1883, complainant, who had been appointed administrator of Horace J. Perrin in the early part of 1880, filed the present amended bill which sets out what is claimed to be a history of such matters as are sought to be litigated, and which are, so far as can be stated generally as follows: It sets forth the making in October, 1858, of articles of partnership for three years between Sibley and Horace Perrin, with stipulation allowing Darius Perrin to come in and his subsequent acceptance, and a renewal by Sibley and Horace Perrin in 1861 for three years. Sibley was to and did contribute $103,806.39. Perrin's contribution was not fixed in the articles, but is averred to have been larger and is one of the controverted facts. All partners were by the articles to share in the management; and in case of death the business

was to be wound up by the survivors and settlement made as soon as practicable. Interest was to be allowed on the capital advanced in accordance with the securities.

Sibley died in September, 1864, about a month before the partnership was to end, and his will was probated October 7, 1864, four days before such proposed termination. The will contained no directions concerning the partnership. Of the five executors named only Horace Perrin qualified. October, 1869, Francis M. Sibley, the residuary legatee married Anna Louisa Montgomery, and on the 30th of November 1870, died at the age of twenty-five years and upwards, leaving his whole estate to his widow, now Mrs. Fisk.

The bill further states that a farm called the "Tillotson Farm" was bought by the firm subject to a mortgage which was foreclosed in 1865 and bid off by Darius Perrin, but the consideration was paid out of firm assets and it belonged to the firm; that a part was afterwards sold to one Calkins for $4000, which Horace Perrin received and is alleged to have charged himself with and that the land unsold, and in Darius Perrin's name, belongs to the firm and has been so treated by Horace Perrin and he has so entered the income. It is claimed by the defense that there are some inconsistencies in the dealings with this property.

The bill sets up the ownership by the firm of a lot of one and eighty one-hundredths acres on Hughes street in Marshall which it avers was conveyed by Horace Perrin in 1876 to one of the defendants, Caroline E. Perrin without consideration and when he was incompetent to do business, and that a suit is now pending in the United States court in favor of his heirs to recover it. It also sets up the ownership by the firm of the Tillotson mill property held in the names of Sibley and Horace Perrin, and mortgaged for $6000, bid off at foreclosure by the holder, Mrs. Chester, by some arrangement of Horace Perrin, but really for the firm and conveyed by Horace Perrin without consideration and while incompetent to Caroline Perrin, who is in possession. This is also claimed by defendants to have been dealt with inconsistently. A farm known as the "Mason Farm" held in the name of

Sibley and Horace Perrin and sold on mortgage foreclosure to Caroline Perrin is claimed to have been paid for on foreclosure by Horace Perrin, who was incompetent, and the deed to Caroline is claimed to be void as against the firm and Horace Perrin's estate to be entitled to a claim for the price advanced.

Another property in Battle Creek mortgaged to the firm is alleged to have been bid off under Horace Perrin's direction in the name of Elizabeth Perrin, who had no real interest in it, and who in 1878 to enable him to control the same gave Horace Perrin a mortgage for $12,000. The bill claims the property is held by her for the firm. These various parcels are claimed by the bill to be all that the firm owned.

. It further sets out that Sibley's capital was shrunk by losses and so far drawn out that his interest in the concern was valueless, and that Horace Perrin never had less capital invested than $189,000, and undertakes to give a statement of the condition of the assets at Horace Perrin's death, and avers the necessity of an accounting to settle up the private estate, and that the Sibley estate and Darius Perrin claim large balances due them. It also sets out various expenditures after Sibley's death on property held in common, made by consent of Francis Sibley, and resulting in large claims in favor of Horace Perrin. And it prays a receiver of the lands before described, and of the partnership assets and a partnership accounting; for the establishment and enforcement of liens for the expenditures on the estate in common; and for a complete settlement of all the accounts with the Sibley estate, so that this suit may wind up all matters between all the parties.

The defendants chiefly interested in the Sibley estate and Darius Perrin, who are the principal persons concerned in the matters in controversy, put in answers, and combined with them, as allowed under the rules, the features of cross-bills. Besides taking issue on the correctness of various matters in the bill, they raise several objections and classes of objections to the conduct of Horace J. Perrin and his administrator, and point out several matters which are claimed to

raise equities for both defense and affirmative relief. The more important of these issues relate to the supposed state of the partnership business and the way in which the accounts have been handled and the conduct of Perrin and others in dealing with the Sibley and partnership interests and assets. A brief reference to the nature of these controversies will be enough to give means of understanding the appeal.

It is claimed that the business of the partnership was profitable, and that the Sibley estate and its interest in the concern very much exceeded what complainant avers, and that Horace J. Perrin's share was much less than the bill alleges and that his contributions to the concern are not fairly stated and are exaggerated. It is also claimed that the partnership property was used after Sibley's death in such a way that land and other assets included in the statements of H. J. Perrin's private estate are in whole or in part the result of the use of partnership funds, and that the alleged smallness of the Sibley assets and the magnitude of the Perrin estate can only be accounted for by this means.

Reliance is also had upon the misconduct of Horace J. Perrin in taking no steps to close up the partnership interests and the Sibley estate during the fifteen years and more that passed between Sibley's death and his own, and upon the alleged failure of the present administrator (complainant) to expedite the settlement and accounting. It is complained that the various interests were confounded in the method of keeping books; that the partnership accounts never showed the true annual condition of interest, profits, or current business in an intelligible way; that there were not such entries as explained what became of property sent forward for disposition, and its returns; that the accounts were not so posted as to be complete or correct; that the discrepancy between the actual and entered indebtedness of the firm was some $250,000; that no inventory was made of partnership assets at any time after Sibley's death; that the individual and company accounts were blended and never separated in any intelligible way either on the books or in any of the ostensible

accountings; and that the inventory of the Sibley estate was untrue and defective.

It is further alleged that shortly after Sibley's death all of the firm assets were transferred to the Bank of Michigan, and treated as bank assets on its books, and that memorandum checks given by Sibley and Perrin to account for stock that was merely nominal were so charged and dealt with as to create false charges of debt against the estate, and that the ostensible property of the bank was finally so managed as to be transferred to Horace J. Perrin, and that a National Bank subsequently organized was vested with the same assets, and Horace J. Perrin became holder in his own name of the securities and interests which were so represented, when in fact they were throughout legitimately partnership assets; that large profits resulted from the management of this property which belonged to the firm, but which are represented as Horace Perrin's private estate.

Reference is further made to several banks organized mostly in other states for the purposes of the firm, in which the firm was entitled to the profits derived from the circulation and to the securities disposed of beyond the amount necessary to redeem the bills, which were in some instances alleged to have been bought up at a large discount, and the bonds disposed of so as to leave a profit beyond the amounts so invested in the purchase; and that the results and amounts of these transactions are either omitted from the books or so entered as to give credits to Horace J. Perrin for what did not belong to him; and that account-books of the banks at Marshall which managed the partnership assets and should have shown their condition and profits have been kept secreted and inacessible to the parties interested.

It is further claimed that real estate belonging to the partnership has not been so reported or accounted for, and that real interests and other assets belonging to Sibley were not credited as his on the books, and that fraudulent claims were set up by Perrin's procurement or complicity against the Sibley estate which are averred to have been illegally and improperly allowed, and not binding. Horace Perrin is also

charged with having so fraudulently altered the agreement for continuing the partnership during its last term as to deprive Sibley and his estate of the amount of interest on the securities which he furnished, which was stipulated in the body of the articles, and which was not to be changed during such continuance. It is also charged that in making outlays and improvements on the property held by tenancy-in-common after Sibley's death, and alleged by complainant to have been made by Frank Sibley's consent, Horace J. Perrin greatly overcharged the actual amount of the outlays, and concealed and misrepresented the receipt of insurance moneys for the loss of buildings etc., replaced by those outlays.

It will thus appear that the controversy is substantially over the dealings of Horace J. Perrin with the Sibley and partnership trusts, and that the complaints on the part of the defense rest chiefly on the alleged grounds of neglect and fraud in the management, and in keeping the accounts, in concealing the true state of affairs, in converting assets and in so contriving that he made large gains and accumulations which really belonged to the trusts. And a chief means complained of is the alleged obliteration of the trust character of assets by various methods which have led to the confusion of the fiduciary assets with what are made to appear as his own. It is also claimed that complainant has impeded the settlement of the business and accounting.

All of these complaints are disputed by complainant and the final determination of the complete equities will necessarily be made upon an ultimate hearing.

The appeal now before us raises the question whether before the final hearing it was within the proper discretion of the circuit court to include within the receivership, in addition to the acknowledged partnership and Sibley assets, the custody pendente lite of the Horace J. Perrin assets, which defendants claim are so blended with individual and fiduciary rights as to make it proper for the court which has jurisdiction of all the questions in controversy to assume charge of all the funds to which the controversy relates until the dis-

pute can be adjusted. The court below, in making the order found a series of facts as appearing on the motion.

The principal legal objection suggested is that the effect of the order is to deprive a person holding a legal title of the control of the property so held, in advance of a final hearing. Other questions relate rather to the property than to the legal power of the court to grant such relief in a proper case.

To a portion of this order complainant under his bill could not object. The bill prays for a receiver of the lands of the firm, and it is very well settled that the assets of a firm do not belong to the personal representative of one partner. If Darius Perrin was an undisputed partner, he is the only survivor. But he himself applies for this receiver as well as the representative of the Sibley estate, and under such circumstances a receiver is a matter of course. Kerr on Receivers 94: 3 Daniell's Chancery Practice 1969; *Philips v. Atkinson* 2 Brown's Ch. 272.

The only part of the order which complainant can seriously question is so much of it as grants a receiver of the assets which complainant claims as belonging to Horace Perrin's estate.

There is one ground taken on argument which requires notice to be taken of a distinction which is of some importance. In urging the impropriety of interfering with the custody of a personal representative the authorities relied on were chiefly such as related to the right of an executor or administrator, unless upon strong equities, to manage the estate as against interference on the part of the distributees. In most, if not all of these cases, the title of the estate itself to the assets was not in question. But the claim here is that the administrator by the fault of the intestate had in his hands assets which do not equitably belong to the estate, and that the court where the controversy is pending should hold the property till this matter can be examined. As already seen a receiver will always be appointed, if desired, to take charge of partnership assets which had been held by a surviving partner in whom the title had vested in that capacity. The apparent property of the estate is alleged to include

such assets. And the question now is whether under such circumstances as are claimed to exist here, there is such a dispute concerning the funds as will empower the court to interfere. It is not a question merely between Perrin's heirs and his representative, although such a controversy exists on the part of Darius Perrin.

If such an interference can be had upon an interlocutory hearing, before the case is heard on the merits, and if enough was submitted to the court to call for the exercise of the judicial discretion of the judge who heard the motion, the order is not a final order and is not subject to be reviewed by our discretion.

If it can be treated as a final order it is made so by its effect and not by its expressed purpose. The order is made in a pending suit in which all the matters involved in the receivership are in litigation, and the appointment is collateral to that litigation, and made upon notice and argument of the application. There is nothing in the application itself, or the object for which it is made, which distinguishes it from the receivership cases which have been held in all courts here and elsewhere to be interlocutory and collateral, and beyond appeal. In all cases of trust and fiduciary dealings it is always possible that on the final hearing the party charged with the custody of assets may be held entitled to their return. But where parties interested in a fund make such a showing as satisfies a court of equity that they should have the property put in charge of the court for any sufficient reason, pending the litigation, it is not held that such custody is a divesting of a right, or a prejudging of the cause. In the present case, as already suggested, a very large part of the grounds for interference do not depend directly on personal mismanagement of complainant, but upon conduct of his intestate, and rights which existed against his dealings cannot be extinguished by the transfer of his estate by operation of law to his representative.

Without going at large into facts which we cannot review, the question of jurisdiction in the circuit court to hear an application for a receiver of the estate of Horace Perrin is

one which necessarily goes and is confined to the power of the court. If the facts asserted, and on which there was enough showing to allow them to be considered, were such as to bring the case within such principles as have been acted on in equity heretofore, the order cannot be regarded as illegal, and we have nothing to do with its correctness on other grounds.

Certain facts appear undisputed or asserted by complainant that first require attention as to their relevancy to jurisdiction. Horace Perrin occupied a double fiduciary relation as Sibley's executor and as one of the surviving partners. The statutes required him in the former capacity, and the rules of equity and the articles of partnership required him in both, to wind up the trusts and distribute the property with convenient speed, and not to continue the partnership business for any purpose but that of winding up. The failure to comply with these duties, and the continuance of the trust unsettled for fifteen years was presumptively a violation of duty. How far it can be satisfactorily explained is one of the final questions in this case, to be dealt with on the final hearing. But on an application for a receiver, unless sufficiently justified to convince the judge, it was evidence of fiduciary misconduct which might be considered in determining whether the funds should not be taken in charge. It is also a well-settled duty of fiduciary managers to keep funds separate and to keep and have ready to exhibit distinct and intelligible accounts. The controversy as to how far this was done cannot be said to be without evidence bearing against both Horace Perrin and his representative.

The bill of complaint itself shows that Horace Perrin was instrumental in having interests of the partnership placed in his own name, and in the names of third persons some of whom were his relatives in such a way as to give them apparently a title which could not be reached by the parties interested in the firm. Whether this was done with fraudulent design by him, or whether in whole or in part accomplished by fraud in others when he was non compos, is also a question on which it cannot be said the court had nothing

before it on which his misconduct could not be inferred, whether the presumption against him is of greater or less force.

The account-books are claimed, and there are facts on which the claim might legitimately be urged, to have been confused and in some instances concealed, mutilated or made away with. All of this is claimed on the other hand to be explained. But how far this explanation was satisfactory was for the circuit court to determine. There can be no denying that the rights of parties in such a case as this would be greatly jeoparded by any failure in the accounts to clearly explain them, and that such a danger is a danger to the fund if there is a fund.

One of the prominent if not the most prominent of the inquiries in the case is whether and to what extent the large accumulations in the name of Horace J. Perrin are the results of the assets of Sibley or of the partnership. That the firm assets have heretofore been placed to some extent in Horace J. Perrin's name appears from the bill; and that if the bank property was firm assets those assets passed into or through his name appears to be probable if not admitted. This imperiled the fund in case of his death or incapacity, whether well or ill meant, and furnished some facilities for concealing as well as perpetrating fraud. And there is enough in the case to justify discussion whether the ultimate growth of the private estate and meagerness of the trust property, have resulted from the use of the latter in private investments or speculations. It is claimed, however, that whatever profit Horace Perrin may have made in outside transactions is his own at any rate. While it may be possible that profits may be so made lawfully for private gain, it cannot be said that such is the uniform or general rule. Trustees of every sort are generally bound to account for the profits derived from the use of trust funds, and the fact that they mingle them with their own, which is in itself in most cases of at least doubtful propriety, cannot put them on any better moral or legal footing than if they kept them separate. Confusion of assets is of itself in many cases a reason why the possession should be placed where the

person confounding them cannot control them, and the fact that the particular items making up a fund have been changed in identity does not destroy the identity of the fund. If what purports to be Horace Perrin's estate consists in part of separate funds which have been made difficult to be distinguished, that is a reason which the court below had a right to consider as authorizing the whole mass to be taken into legal custody till the separation can be made. If defendants satisfied, as they seem to have satisfied, the circuit court that there was good reason to believe they were equitably interested in the funds, not as creditors at large but as owners of a portion which had been mingled with the rest, as trust funds, there is no doubt of the jurisdiction to reach it and place it in the custody of the court.

There are no decisions in this State which establish any other doctrine. Before as well as since the enactment of the statute which restored the old equity jurisdiction over estates of deceased persons, it was held this Court could not interfere with this protective jurisdiction, if occasion called for it. *People v. Wayne County Judge* 11 Mich. 393. It is claimed or admitted on both sides that the equity proceeding is necessary to settle all the conflicting interests and claims of the parties, and that at the final hearing all those rights must be adjusted. Complainant in this proceeding represents the estate as a fiduciary and does not hold in his separate and private right; while in his litigation he occupies, from his relation as an heir of Horace Perrin, a hostile position to all the defendants who claim interests adversely, and he cannot be supposed to be disinterested. The case of *Duncan v. Campau* 15 Mich. 415, holds that an order for a receivership ancillary to litigation in the same suit, under analogous principles cannot be reviewed on appeal. In *Lewis v. Campau* 14 Mich. 459, where an appeal was allowed, there was no controversy pending in equity for relief, to which the receivership was ancillary, but the whole litigation was in another action, and the controversy was entirely between heirs to the estate under administration. The distinction was pointed out in *Duncan v. Campau* as decisive in that case. The

subject of finality was also discussed in the early case of *Wing v. Warner* 2 Doug. (Mich.) 288. It was also held in *Brown v. Vandermeulen* 41 Mich. 418, that such an ancillary order as this is not appealable. There is no analogy between such a case as this and those which have divested rights ex parte, or in such a way as to give what is equivalent to final relief, or interfered where there was no power to interfere at all, several of which classes were referred to and have been decided by us. The distinction between appealable and non-appealable orders relating to receivers was also referred to in *Railroad Co. v. Soutter* 2 Wall. 510, where a circuit court maintained a receivership in contravention of the decree of the Supreme Court remanding the decree after appeal, and this proceeding was reviewed as beyond the power of the lower court, while receiverships pendente lite were declared to be usually discretionary in any case where they came within the jurisdiction to act.

I think the decree should be affirmed.