McLaughlin v. Penney.

OLIVE E. McLAUGHLIN *et al.* v. JAMES ·L. PENNEY, *as Executor, etc., et al.*

No. 12,748. (70 Pac. 341.)

SYLLABUS BY THE COURT.

TITLE AND OWNERSHIP — *Will Construed — Vested, not a Contingent, Interest Devised.* A will provided for the payment of legacies to the testator's children and grandchildren. It contained no words of gift or devise, but only a direction to pay, upon the sale of property after certain stated times, with a further direction that, in case of the death of any of the legatees without issue, before distribution, payment should be made to the survivors. It was manifest from other provisions of the will that the postponement of the payment of the legacies was not to await the occurrence of any events qualifying the legatees to receive their distributive shares, but only to keep the estate intact and undistributed, in order that the testator's wife might be insured a comfortable support during life. *Held*, that upon the testator's death the legatees acquired a vested, and not a contingent, interest in their undistributed shares.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed October 11, 1902. Affirmed.

*Welch & Welch*, for plaintiffs in error.
*Garver & Larimer*, for defendants in error.

The opinion of the court was delivered by

Doster, C. J.: Nearly all of the will of John A. McLaughlin, deceased, is material to the question in this case. Omitting merely introductory or other formal matter, the instrument is as follows:

"3. It is my first desire that my beloved wife, Louisa McLaughlin, shall be amply provided with a comfortable home, and that ample provision shall be made for her maintenance, comfort, pleasure and happiness as long as she shall live.

"To this end I direct that our home, as now constituted, at No. 1018 Topeka avenue, being lots number three hundred and forty-four (344) and three hundred and forty-six (346), on Topeka avenue, in the city of Topeka, Kan., with our family, consisting of my said wife Louisa McLaughlin, our daughter Emma Evarts, widow, with her children, our son John G. McLaughlin, and our daughter Louise McLaughlin, shall continue to be kept up during the life of my said wife; and for this purpose I direct my executor, hereinafter named, to leave all my household and kitchen furniture, family library, pictures, etc., in my said home for the free and uninterrupted use and enjoyment of my said wife and children above named, so long as such family relation shall be maintained.

"And I further direct that my said executor shall take charge of lot No. two hundred and thirty-one (231), on Kansas avenue, city of Topeka, Kan., collect all rents for the same, and apply said rents, first, to making necessary repairs of the building upon said premises, keeping said building fully insured and payment of all taxes; and second, that he shall pay all taxes, necessary repairs and insurance upon my home property above described; and third, that he shall pay the residue for the necessary expenses of keeping up the home for my wife, as above described, including food and raiment and all other necessary expenses for my said wife, and son John G. McLaughlin, and

daughter Louise McLaughlin; also, for such expense of my said daughter Emma Evarts and her children as she may be unable to provide out of her separate income; but since the provision above set forth is for the purpose of providing for the comfort and enjoyment of my said wife, I do hereby direct that the sharing in the income and proceeds of rentals of said lot No. two hundred and thirty-one (231), on Kansas avenue, by each and all of my children above mentioned, shall depend upon such children continuing to reside in my said home and continuing to contribute to the comfort and happiness of my said wife by any and all acts of filial affection and kindness due from a child to a parent.   And I further direct that all expenditures for the purposes of the home, as above set forth, shall be made by my said executor, or with his advice and consent.   And I further direct my said executor that he shall not apply any of the proceeds of said lot No. 231 on Kansas avenue except as above directed during the life of my said wife.

"4. In case my said wife shall not survive me, or if she shall survive me, then upon her death, I direct that my said executor shall proceed to have my household and kitchen furniture, family library, etc., appraised by three disinterested appraisers to be appointed by the probate court of Shawnee county, Kansas, and then that he shall distribute such articles as may be desired by any of my children to such child and charge the same to such child at the appraised price of such article, as an advancement to such child upon his or her share of my estate.   And I further direct that my said executor shall then proceed to sell, at public or private sale, as to him may seem best, all the residue of my household effects as shall not have been taken by any of my said children.

"5. As a reward for his faithfulness during his continuous service in my employment for a period of more than twenty-one years, I do hereby give, devise and bequeath all and every my gunsmith tools and work-benches now used in my shop in the building situate on lot No. 264 Kansas avenue, city of Topeka,

to George Haus, only stipulating that he shall not take possession of said tools or remove them from said premises until my store and business in said building shall have been sold.

"6. The following are all of my living children and heirs at law, viz.: Mary E. Penney, wife of James L. Penney, of Hutchinson, Kan.; Emma Evarts, widow, of Topeka, Kan.; John G. McLaughlin and Louise McLaughlin, of Topeka, Kan., being all of my living children; also Mabel Estelle Hope, aged twelve years, daughter of my daughter Ida McLaughlin Hope, residing at Independence, Mo., and Olive Eugenie McLaughlin, daughter of my son James A. McLaughlin, aged ten years, and residing at Chicago, state of Illinois.

"7. I desire and direct that in all distribution of my estate, except as been hereinbefore provided, all of my said children and my said grandchildren shall share and share alike; provided, that if my said son John G. McLaughlin, or my said daughter Louise McLaughlin, or either of my said granddaughters, Mabel Estelle Hope or Olive Eugenie McLaughlin, shall die before the distribution of my estate as hereinbefore directed, without issue, then in that case the distributive share of such deceased person shall be distributed to the survivors, share and share alike, in the same manner and upon the same conditions as the remainder of my estate."

"9. I direct that my said executor, so soon as may be practicable after my decease, shall proceed to sell all of my personal property of every kind at public or private sale, with or without appraisement, as to him may seem best, excepting always all property hereinbefore disposed of.

"10. Within five years from the date of my death, I direct that my said executor shall proceed to sell, at public or private sale, as to him may seem best, and without application to or the intervention of the probate court, the following-described pieces and parcels of land, lying and situate in Shawnee county, state of Kansas, to wit: Lots No. three hundred and thirty-

eight (338), three hundred and forty (340), and three hundred and forty-two (342), on Quincy street, in the city of Topeka, Kan.; also lots No. one hundred and ten (110), one hundred and twelve (112), one hundred and fourteen (114), and one hundred and sixteen (116), on East Tenth (10) street, in said city of Topeka; also, the undivided half of the building and lease on lot No. two hundred and sixty-four (264), on Kansas avenue, said city of Topeka, such sales to be made on such terms as to my executor may seem for the best interests of my estate.

"11. I direct that, of the proceeds of the sale of my personal property and the foregoing real estate, my executor shall pay, first, my just debts and the expenses of the caring for and settlement of my estate, and the residue he shall distribute to my children and grandchildren hereinbefore named, as hereinafter directed, in equal proportions, share and share alike.

"12. I direct that my said executor shall, from time to time, as sufficient funds shall come into his hands for the purpose, pay to each of my said daughters, Mary E. Penney, Emma Evarts, and Louise McLaughlin, her *pro rata* share of such funds, to be applied upon her distributive share of my estate; but in case of the death of either said Mary E. Penney or Emma Evarts, I direct that he shall invest the share of such deceased person and apply so much of the proceeds thereof as may be necessary to the support and education of the children of such deceased person, during their minority, and then distribute *pro rata*."

"14. I further direct that my said executor shall, from time to time, invest the share of my said granddaughters, Mabel Estelle Hope and Olive Eugenie McLaughlin, in such manner as to him shall seem for the best interests of said children, during their minority, and shall from time to time, as may be necessary, apply the proceeds thereof towards the proper support and education of said children, and that, upon the arrival of each of said children at her majority, she shall be paid the full amount of her estate.

"15. In consideration of the fact that my said son

John G. McLaughlin seems incapable of acquiring business habits and of following any steady occupation, and seems to lack financial ability, now, therefore, in order to protect him from having his share of my estate squandered, and to protect him from becoming a public charge or a burden to his friends, and to provide for him a comfortable living, I direct that my said executor shall invest the share of my said son in such manner as to my executor shall seem for the best interests of his estate, and shall apply the net proceeds thereof to the maintenance and support of my said son ; and for this purpose my executor shall, from time to time, pay to him, as his necessities may require, such sum as may be necessary for his health and comfort ; but at no time shall any one payment exceed the income of his estate for the preceding three months ; *provided*, that if my said son shall at any time develop habits of industry and thrift, and financial ability, then I direct my executor to render him such assistance from his share of my estate as to my executor shall seem wise and prudent ; but at no time shall my executor give him so much of the principal share of my estate as shall reduce his income below a support, until he shall have established his ability to properly care for his estate and make the same productive. And to further protect my son from unscrupulous persons, I hereby direct that no obligation of any kind by him contracted shall be a lien upon the share of my estate herein set apart for his benefit, or upon any proceeds or income thereof, unless said obligation shall, previous to the contracting of the same, have been approved by my said executor ; it being specially understood and directed that my said son shall only take a life-interest in said share and in the proceeds of the same unless he shall develop the ability to take care of his interests as above stated, and that in the event of his death without having developed such ability, the residue shall descend to his children, if he have any ; otherwise, it is to revert to my other heirs, hereinbefore named, share and share alike, in the same manner as the rest of my estate.

"16.  If from any cause the 'home' for my beloved wife, as hereinbefore described, shall be broken up, then in that case I direct that my executor shall proceed to sell said lots three hundred and forty-four (344) and three hundred and forty-six (346), on Topeka avenue, said city of Topeka, and invest the proceeds in such manner as shall yield a certain revenue, and expend the revenue from the same to provide my said wife and those of our present family who remain with and care for her with a comfortable home and a comfortable living.

"17.  Within five years after the death of my said wife, I direct my said executor to proceed to sell, at public or private sale, as to him shall seem best for the best interests of my estate, all my remaining real estate, to pay all necessary expenses of the settlement of my estate, and to divide the residue among my children and grandchildren as hereinbefore directed."

The Louise McLaughlin named in the foregoing will died before distribution of the estate was made. She left a will devising her estate to various persons. Olive E. McLaughlin and Mabel E. Hope, two of the grandchildren of John A. McLaughlin, named as distributive legatees in his will, contend that upon the death of their Aunt Louise her undistributed legacy lapsed and thus increased the amount of their distributive share. This contention is based upon the fact that their grandfather's will did not in terms devise any property to the testator's children or grandchildren, but contained only directions to distribute it, or to sell and distribute. Hence, it is argued that, on account of the non-occurrence of the actual setting apart of Louise McLaughlin's share in her lifetime, the title to it never vested in her, and, therefore, never passed to the devisees named in her will, but remained a part of her father's estate, to be distributed to the surviving legatees under the seventh clause of his will.

34—65 KAN.

In view of the other terms of the will this argument is not sound.

It is true, of course, that if a legacy does not vest in the lifetime of the legatee it lapses into the estate out of which it was to be paid or passes over to some other named legatee or devisee; and it is true that the non-use in the will of words of gift is evidence, and often strong evidence, of lack of intention in the testator to vest the legacy until the literal happening of the contingencies upon which it is made payable. However, every will furnishes its own law. The language of such instruments is so various that only the most general rules can be laid down for guidance in their interpretation. One of these rules is that the law favors the vesting of estates, and the intent to create a contingent remainder will not be presumed, but must be quite plainly expressed. (*Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288, 3 L. R. A. 690.) In Underhill on Wills, volume 2, section 866, a rule is stated which seems entirely applicable to this case, and which commends itself to us as sound:

"A legacy will the more readily be construed and vested in every case where there is no other gift than a direction to pay or to distribute money, if it is apparent that the payment or the distribution was postponed, not in order that the legatee should personally *perform some act or acquire some personal qualification as a condition precedent* to payment, but where the postponement is clearly intended for the benefit of some one who takes a prior interest, or, in the language of the cases, where the postponement of payment is 'for the convenience of the estate.' An illustration of this is found where a fund is bequeathed to pay A. the income for life, and on his decease to divide or to distribute among individuals or a class."

This statement of text is illustrated by a large number of decisions cited in the foot-note. Now, in this

case, the terms of the will laid no obligation on Louise McLaughlin to qualify herself to receive her father's legacy.   She was not required to reach a certain age, nor to marry, nor to have issue, nor to perform any act, nor acquire any status as a condition precedent to the enjoyment of her distributive share.   It is apparent, however, that the testator had a reason for withholding its present enjoyment from her.   That reason was his plainly evinced desire that his estate should be kept intact, or largely so, in order to insure a comfortable maintenance for his wife.   In the third clause of his will he declared as follows :

"It is my first desire that my beloved wife, Louisa McLaughlin, shall be amply provided with a comfortable home, and that ample provision shall be made for her maintenance, comfort, pleasure and happiness so long as she shall live."

The evidence of this conjugal solicitude runs throughout the will.   Immediately after the above-quoted expression of desire, he declared that, in furtherance of it, he directed that the homestead of himself and wife should "continue to be kept up" during her lifetime, for her use and enjoyment and that of their children.   To the end that the home might not be broken up, but might be kept for his wife and children, he further directed in the third clause that the net income from a certain other building and lot should be applied toward keeping the former up, and toward the support of his wife and such children as might remain there with her.   Further on, in the sixteenth clause, he directed that, "if for any cause the home for my beloved wife as hereinbefore described shall be broken up," it be sold and the proceeds invested in such manner as to provide for the support of his wife and such of their children as remained with and cared for her.   In the fourth clause, he directed

that his household belongings, library, etc., should not be sold or distributed until after the death of his wife. After directing, in the tenth and succeeding clauses, that his personal property and certain described real estate be sold and the proceeds distributed among his legatees, he further directed, in the seventeenth clause, that the remainder of his property be sold and distributed after the death of his wife. Thus, throughout the will he manifested the solicitude first expressed in it that his wife should be certainly and continually provided with a comfortable maintenance, and that to that end sufficient of his estate should be kept intact and undistributed, and that, as a means to such end, the payment of the legacies, and not their vesting, should be postponed.

The judgment of the court below is affirmed.

All the Justices concurring.