FLORENCE E. HIGGINS, et als.

*vs.*

ELIZABETH E. BECK, et als.

Penobscot.    Opinion March 31, 1917.

*Meaning of words "surplus income," "net income." Rule where bonds are part of trust funds. Rule as to vesting of title to bequests or legacies which are to be paid at the death of a particular person.*

Bill in equity for construction of certain portions of the will of John H. Higgins.

The residuum of the personal estate of the testator was given to his three daughters, who are the plaintiffs here, to be held by them and the survivors or survivor, in trust until the last one of them should decease; the net income only of said trust fund to be paid from time to time to them equally, the issue of those deceased, if any, to take the share of the net income that the parent would be entitled to, if living, and upon the decease of all three of the daughters of the testator then the principal of the trust fund was to be divided according to certain terms mentioned in the will.

The testator died April 16, 1910. Prior to his death, to wit, on July 20, 1909, his brother, A. Hamilton Higgins, died testate. The latter was a resident of New York City at the time of his death and·his will was probated and allowed in the Surrogate Court of that city.

In the will of Hamilton there was a provision that the residuum of his estate should be held in trust during the life of his wife, and upon her death the trustees were directed by the testament to divide and pay over the trust fund "to such of my brothers or sisters as may survive me and unto the issue me surviving or either of them who may have died before me" (an exception of one relative being made) "and unto the issue me surviving of any issue dying before me of any of my brothers or sisters who may fail to survive me, said issue to take the share to which his, her or their parent or parents would have been entitled to if living."

Soon after the death of Hamilton the Surrogate Court was called upon to construe his will for the purpose of determining whether or not certain directions therein for accumulation of a portion of the income were void, and if void, to determine whether or not the income of the trust fund, not then payable to the widow, was payable to the persons designated in the will as the ultimate beneficiaries. The court decided that these certain directions for accumulation were void, and that a certain sum, then held by the executors as income of the trust fund, was presently distributable to the holders of the next eventual estate. As a result of that decree there was paid to these plaintiffs, as executors of the estate of John H. Higgins, the sum of $1,323.54. The Surrogate Court further ordered the executors of Hamilton's will to hold certain cash and securities, to pay the widow of Hamilton the income from one hundred thousand dollars thereof and to distribute the surplus income therefrom arising from time to time to the holders of the next eventual estate.

As a result of this further order, and the decree for payment of the specific sum just named, the plaintiffs have already received the sum of $1,867.53 from this surplus income arising out of the estate of Hamilton, and will receive further sums in the future.

We are requested to determine, by construction of the will of John Higgins, whether the $1,867.53 already received, and the further sums to be received, from the so-called "surplus income" of Hamilton's estate, constitute a part of the net income of the estate of John H. Higgins, to be paid directly by the plaintiffs, in their capacity as trustees, to themselves as individuals, because they are entitled to the net income of their father's estate, or whether this "surplus income" should be added to the corpus of the estate of their father, thus enlarging the principal of the trust fund from which they are to derive a net income, and eventually, with the rest of the trust fund, be paid to the persons entitled to such trust fund on the death of his last surviving daughter.

*Held:* Where there is a gift of a legacy, or a share of a residue, to be paid at the death of a particular person, the gift vests in the legatee at the death of the testator, and the time applies only to the payment. Applying this rule to the present case it must appear that the legacy or distributive share of the trust fund, which Hamilton's will provided for John, became vested in John at the

death of Hamilton. It follows therefore that this "surplus income" is a part of the income of the residuum of John's estate and should be enjoyed accordingly by his daughters.

Another and entirely different question is raised by the plaintiffs. John H. Higgins, at the time of his death, owned certain bonds issued by various railroad companies all of which were worth more than their par value and were appraised in the inventory above par value. The plaintiffs say and the answers admit that these bonds are part of the trust fund created by their father's will, from which they are entitled to the net income, but that they are in doubt as to whether or not the whole of the income which they have already received, and which they may hereafter receive from said bonds, constitutes part of the net income of the trust estate, and whether or not it should all be paid to the plaintiffs for their own exclusive individual benefit; or whether some part thereof, as fast as received, must be treated as part of the principal of the trust estate.

*Held:* If a testator leaves bonds, which he owns, to trustees, with directions or authority to hold the same, paying the interest to certain persons for life, with remainder over, the fact that such bonds are worth a premium at and after his death will not warrant the trustees in retaining any portion of the interest for the benefit of the remainder-men. The plaintiffs are therefore entitled to the entire income from these bonds, without deductions in favor of the remainder-men.

Bill in equity asking for construction of certain clauses or portions of the will of John H. Higgins of Charleston, Maine. The cause was heard upon bill and answer, and it appearing to the Justice presiding that questions of law were involved of sufficient importance and doubt to justify the same, by consent and agreement of the parties the cause was reported to the next Law Court for hearing and decision upon bill as amended and answers, the Law Court to render such final judgment as the legal and equitable rights of the parties require. Decree to be drawn in accordance with opinion.

Case stated in opinion.

*George H. Worster*, for complainants.

*Ryder & Simpson*, for Guardian ad litem.

*Arthur L. Thayer*, for Higgins Classical Institute.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, PHILBROOK, JJ.

PHILBROOK, J. This is a bill in equity coming to this court on report, wherein the plaintiffs, as executrices and trustees under the will of John H. Higgins, allege that they are in doubt as to the mode of executing the trust created in said will, and pray that certain portions of said will may be construed and interpreted.

The residuum of the personal estate of the testator was given to his three daughters, who are the plaintiffs here, to be held by them and the survivors or survivor, in trust until the last one of them should decease; the net income only of said trust fund to be paid from time to time to them equally, the issue of those deceased, if any, to take the share of the net income that the parent would be entitled to, if living, and upon the decease of all three of the daughters of the testator then the principal of the trust fund was to be divided according to certain terms mentioned in the will.

The testator died April 16, 1910. Prior to his death, to wit on July 20, 1909, his brother, A. Hamilton Higgins, died testate. The latter was a resident of New York City at the time of his death and his will was probated and allowed in the Surrogate Court of that city.

In the will of Hamilton there was a provision that the residuum of his estate should be held in trust during the life of his wife, and upon her death the trustees were directed by the testament to divide and pay over the trust fund "to such of my brothers or sisters as may survive me and unto the issue me surviving or either of them who may have died before me" (an exception of one relative being made) "and unto the issue me surviving of any issue dying before me of any of my brothers or sisters who may fail to survive me, said issue to take the share to which his, her or their parent or parents would have been entitled to if living." Further provisions were made as to the division if a brother or sister of Hamilton died before his decease but those provisions do not call for discussion here. As we have seen, the testator in this case, John H. Higgins, a brother of Hamilton, survived the latter. In the recent case of *Bryant* v. *Plummer*, 111 Maine, 511, this court had occasion to refer to the well established rule that where there is a gift of a legacy, or a share of a residue, to be paid at the death of a particular person, the gift vests in the legatee at the death of the testator, and the time applies only to the payment. Applying this rule to the present case it must appear that the legacy or distributive share of the trust fund, which Hamilton's will provided for John, became vested in John at the death of Hamilton.

Soon after the death of Hamilton the Surrogate Court was called upon to construe his will for the purpose of determining whether or not certain directions therein for accumulation of a portion of the income were void, and if void to determine whether or not the income of the trust fund, not then payable to the widow, was payable to the

persons designated in the will as the ultimate beneficiaries. That court decided that these certain directions for accumulation were void, and that a certain sum, then held by the executors as income of the trust fund, was presently distributable to the holders of the next eventual estate. As a result of that decree there was paid to these plaintiffs, as executors of the estate of John H. Higgins, the sum of $1,323.54. The Surrogate Court further ordered the executors of Hamilton's will to hold certain cash and securities, to pay the widow of Hamilton the income from one hundred thousand dollars thereof and to distribute the surplus income therefrom arising from time to time to the holders of the next eventual estate.

As a result of this further order, and the decree for payment of the specific sum just named, the plaintiffs have already received the sum of $1,867.53 from this surplus income arising out of the estate of Hamilton, and will receive further sums in the future.

We are requested to determine, by construction of the will of John Higgins, whether the $1,867.53 already received, and the further sums to be received, from the so-called "surplus income" of Hamilton's estate, constitute a part of the net income of the estate of John H. Higgins, to be paid directly by the plaintiffs, in their capacity as trustees, to themselves as individuals, because they are entitled to the net income of their father's estate, or whether this "surplus income" should be added to the corpus of the estate of their father, thus enlarging the principal of the trust fund from which they are to derive a net income, and eventually, with the rest of the trust fund, be paid to the persons entitled to such trust fund on the death of his last surviving daughter.

As we have already observed, the distributive share of John, in the estate of Hamilton, was vested in the former at the death of the latter. We have also noted that subsequent to that death, by the decree of the Surrogate Court, the "surplus income" arising in Hamilton's estate was declared to be due and payable to the holders of the next eventual estate, of which holders John was one. The trust fund, out of which this "surplus income" arose, was the residuum of Hamilton's estate, and the devise to John and the other brothers and sisters of Hamilton was the devise of a residuum. "It is constantly held that a residuary devise, in the ordinary terms, carries with it not only the property of the testator in which no interest is devised or bequeathed in other portions of the will, but

also all reversionary as well as contingent interests in property which are not otherwise disposed of by him." *Davis* v. *Callahan,* 78 Maine, 313.

In *Pierce* v. *Stidworthy,* 79 Maine, 234, we find a case where a testator devised to his wife, for her support during life, all the residue of his estate, both real and personal of which he should die deceased, or which he might be entitled at his decease. Some years after his death, but during the life of the widow, his estate was awarded quite a sum of money under the so-called "Alabama Claims" and the court held that this after acquired money was part of his estate from which the widow might receive support because it was a property right existing before his death even if the testator could not enforce the right during his lifetime. See also *Grant, Applt.,* v. *Bodwell,* 78 Maine, 460.

From these authorities we conclude that the vested right which John had in Hamilton's estate was a portion of the estate of John, since we have been shown no part of Hamilton's will which otherwise disposed of it, and that it was a property right forming a portion of the residuum of John's estate, as much as the stocks and bonds owned by and in the possession of John at his decease and from which his daughters were to receive the net income as set forth in the bill. It follows therefore that this "surplus income" is a part of the income of the residuum of John's estate and should be enjoyed accordingly by his daughters.

Another and entirely different question is raised by the plaintiffs. John H. Higgins, at the time of his death, owned certain bonds issued by various railroad companies all of which were worth more than their par value and were appraised in the inventory above par value. The plaintiffs say and the answers admit that these bonds are part of the trust fund created by their father's will, from which they are entitled to the net income, but that they are in doubt as to whether or not the whole of the income which they have already received, and which they may hereafter receive from said bonds, constitutes part of the net income of the trust estate, and whether or not it should all be paid to the plaintiffs for their own exclusive individual benefit; or whether some part thereof, as fast as received, must be treated as part of the principal of the trust estate.

In *Shaw* v. *Cordis,* 143 Mass., 443, the court declares "If a testator leaves bonds which he owns to trustees, with directions or authority

to hold the same, paying the interest to certain persons for life, with remainder over, the fact that such bonds are worth a premium at and after his death will not warrant the trustees in retaining any portion of the interest for the benefit of the remainder men." It is true that in the will under consideration there is no specific direction or authority given the trustees to hold these certain securities but a fair construction of the will leads to the conclusion that the testator intended that the whole income of the trust fund should be paid to his daughters without any deduction in favor of the remainder-men. This should accordingly be done.

*Decree below to be drawn in accord-*
*ance with this opinion.*