LODEMA S. ATCHISON et al., Appellees, v. O. T. FRANCIS et al., Appellees, C. B. PATTERSON, Appellant.

WILLS:  Contruction—Remainders—Vested (?) or Contingent (?)—
1  "Divide and Pay-Over" Rule—Deferring Enjoyment—Effect. *Postponing actual delivery and enjoyment of an estate in remainder does not necessarily prevent the vesting of such remainder.*  A devise of a life estate, with no words of grant or gift as to the remainder, except a clear direction to *sell* the property, after the death of the life tenant, and to *divide* the proceeds equally among *named* persons, with proviso that, in case of the death of any of said named persons, his share shall be paid to his lawfully begotten heirs, creates a *vested* remainder in said named persons instantly upon the death of testator, said clause with reference to survivorship being applicable only in case of the death of the devisee *prior* to the death of testator.

REMAINDERS:  Contingent Remainders—Rule of Rejection.  Prin-
2  ciple recognized that *vested* remainders are in such favor in the law that, if the construction of a devise is open to any doubt upon the question whether the remainder is vested or contingent, the former will prevail, and the latter will be rejected.

REMAINDERS:  Words of Survivorship—Construction and Effect.
3  Principle recognized that "words of survivorship" in connection with a devise of a remainder will, unless the devise *clearly* indicates the contrary, be construed to have reference solely to the death of such devisee prior to the death of testator.

REMAINDERS: Contingent Remainders—Postponing Enjoyment—
4 Effect. An estate in remainder is not rendered *contingent* sim-
ply because possession and enjoyment are postponed until the
termination of another estate, i. e., a life estate.

REMAINDERS: Contingent Remainders—Devise to Testator's
5 Children—Presumption. The devise of a iife estate to a wife,
with remainder to the *children* of testator, carries a much
stronger presumption of intent to provide a *vested* remainder
than in those cases where the remaindermen have no natural
claim on testator's bounty.

*Appeal from Mahaska District Court.*—K. E. WILLCOCKSON,
Judge.

DECEMBER 18, 1917.

ACTION in equity to quiet title. By his answer, the de-
fendant, C. B. Patterson, sets up a claim of title to an un-
divided part of the property. A demurrer to his answer
was sustained, and decree rendered as asked by the plain-
tiff. Defendant Patterson appeals. —*Reversed and re-
manded.*

*John T. Clarkson,* for appellant.

*Irving C. Johnson, C. H. Mauntel,* and *W. R. Lacy,* for
appellees.

WEAVER, J.—The question presented is
1. WILLS: con- wholly one of law, and its decision turns
struction:
remainders: upon the construction to be given to the will
vested (?) or
contingent (?): of John W. Atchison, deceased. By the
"divide and
pay-over" rule terms of this instrument, Elizabeth Atchi-
deferring en-
joyment: ef- son, the widow, was given a life estate in
fect.
all the real property left by the testator.
In a subsequent paragraph is found the following language:

"Six:—I will, desire and direct that at the death of
my beloved wife the residue of my estate, both real and
personal, be sold and that the proceeds thereof be disposed

of as follows:   I direct that out of said proceeds there shall be paid to my grandson, Alva Fall, the sum of one hundred dollars and that the remainder of said proceeds after paying the said sum of one hundred dollars be equally divided between my beloved daughters Mary L. Patterson, Lodema S. Atchison and Eva E. Horn, share and share alike, and in case of the death of each or any of said children aforesaid, said individual share to be paid to the lawful heirs of their body begotten."

The testator died in the year 1901, and the widow in 1913.   The testator was survived by all his three daughters named in the will; but one of them, Mary L. Patterson, died intestate in 1912, or about one year before the death of the life tenant.   Mrs. Patterson was survived by her husband, C. B. Patterson, who is the appellant in this case.

Stated briefly, the question is whether, these facts being conceded, appellant, as the surviving husband of Mary L. Patterson, acquired or succeeded to any right or interest in the property of which John W. Atchison died seized.

It is the claim of the appellees that the will provides for no remainder over, either vested or contingent, and that no title or interest of any kind was vested by the will in any of the children until the time arrived for the sale and distribution of the estate after the death of the widow; and that, as Mary L. Patterson died before that time arrived, she never acquired or had any interest therein.   On the other hand, it is appellant's theory that the will does provide for a remainder over, and vests the same in testator's three named daughters, of whom Mary L. Patterson was one; that her rights as such beneficiary became fixed and vested at once upon the death of John W. Atchison; and that, upon her dying intestate, appellant acquired a surviving husband's statutory share in her property, including this which she derived through the will of her father.

The theory of appellee's counsel, that the will creates no remainder over, is manifestly quite untenable. It is conceded, and indeed must be, that the will does provide a life estate; and, in the very nature of things, when this particular estate was created, the title or fee, less the particular estate, must have been left in somebody. If the will did not dispose of it, then it would remain in the form of a reversion in the heirs of the deceased, who would inherit it as intestate property, wholly independent of the will. But it is perfectly apparent that the will, after creating the life estate, does provide, in specific and unambiguous terms, for the disposition of all the rest of his property, real and personal, and this constitutes the creation and disposition of a "remainder," whether the will designates it by that or some other name. That the owner of the fee may by will create a life estate in the property, without a reversion in himself or his heirs, and without a remainder over in anyone, is a legal impossibility. The testator in this case did not attempt any such feat. He gave his wife a life estate; and, subject only to the payment of his debts and the payment of a small legacy, he gave the remainder over to his three daughters, not as a class, but as three specifically named individuals. True, he did not, in express words, use the term "give" or "devise," but (what was equivalent thereto) he directed a sale of the property and a division of the proceeds to the daughters in equal shares, suspending such division for such time only as was necessary to let in the life estate of the widow. There is not a word or phrase in the will, or a circumstance connected therewith, suggestive of the thought that the postponement was intended to work a suspension of the daughters' right and interest in the property, or was provided for any other purpose than to withhold possession and enjoyment thereof until the widow's life estate should expire.

There is a class of cases in which legacies are given to

be divided and paid at a future day to persons named, or to a designated class of persons who shall *then be living,* or where by the terms of the will such restriction is fairly to be implied, and no right vests under such gifts until the appointed time arrives, and the remainder in such cases will be regarded contingent. But where the postponement is made merely to let in a life estate, or serve the convenience of the estate in any other respect, and there is no restriction of the devise in favor of survivors or of persons or classes to be determined *in futuro,* then the postponement affects, not the vesting of the legatee's right to the gift, but only the right to its present delivery or enjoyment.

2. REMAINDERS: contingent remainders: rule of rejection.

Before citing a few of the almost countless precedents which establish and illustrate this rule, it is well to recall a few of the elementary principles which govern the construction of gifts of this character. The law always favors the vesting of estates; and, if the construction of the devise is open to any doubt upon the question whether the remainder is vested or contingent, the former will prevail, and the latter will be rejected. *Kellett v. Shepard,* 139 Ill. 433, 443; Schouler on Wills (2d Ed.), Sec. 563; *Archer v. Jacobs,* 125 Iowa 467; *Putbrees v. James,* 162 Iowa 618; *Ross v. Ayrhart,* 138 Iowa 117, 121. It is equally

3. REMAINDERS: words of survivorship: construction and effect.

well settled that, where a devise of a remainder or other right or interest in property is accompanied by words of survivorship in the event of the devisee's death, they will be construed to have reference to the death of such devisee before the will becomes effective by the death of the testator, unless the language of the instrument clearly reveals a different intent. *Collins v. Collins,* 116 Iowa 703; *Callison v. Morris,* 123 Iowa 297; *Tarbell v. Smith,*

125 Iowa 388; *Haviland v. Haviland,* 130 Iowa 611; *Lingo v. Smith,* 174 Iowa 461.

Of the multitude of precedents bearing

**4. REMAINDERS:**
**contingent**
**remainders:**
**postponing**
**enjoyment:**
**effect.**

upon the construction of wills in which the testator first provides a life estate for his widow or other person, and follows this by a direction that, upon the expiration of such life estate, the property shall be divided or shall be sold, and the proceeds divided between certain named persons, or members of a designated class of persons, and holding such remainders to be vested, we will cite a few illustrative cases. If we first look to jurisdictions other than our own, we find, with very few exceptions, a unanimous holding that, in such cases, the beneficiaries named acquire a vested right therein immediately upon the death of the testator. *Johrden v. Pond,* 126 Minn. 247 (148 N. W. 112); *Rumsey v. Durham,* 5 Ind. 71; *Knight v. Pottgieser,* 176 Ill. 368 (52 N. E. 934); *Scofield v. Olcott,* 120 Ill. 362; *Aldred v. Sylvester,* 184 Ind. 542 (111 N. E. 914); *In re McCauley's Estate,* (Pa.) 101 Atl. 827; *Huber v. Donoghue,* 49 N. J. Eq. 125; *Grimmer v. Friederich,* 164 Ill. 245; *Heilman v. Heilman,* 129 Ind. 59 (28 N. E. 310); *McArthur v. Scott,* 113 U. S. 340 (28 L. Ed. 1015); Rood on Wills, Sec. 590, 591; *Bryant v. Plummer,* 111 Me. 511 (90 Atl. 171); *Moulton v. Chapman,* 108 Me. 417 (81 Atl. 1007); *Cropley v. Cooper,* 86 U. S. 167 (22 L. Ed. 109); *Weller v. Kolb,* 128 Md. 221 (97 Atl. 542); *Gairdner v. Gairdner,* 1 Ont. Rep. 184; *Packham v. Gregory,* 14 L. J. Ch. (N. S.) 191; *Cogburn v. Ogleby,* 18 Ga. 56; *Hocker v. Gentry,* 3 Metc. (Ky.) 463; *In re Neel's Estate,* 252 Pa. 394 (97 Atl. 502); *Post v. Herbert's Exrs.,* 27 N. J. Eq. 540; *Vanhook v. Vanhook,* 21 N. C. 589; *Martin v. Cook,* 129 Md. 195 (98 Atl. 489); *McLaughlin v. Penney,* 65 Kan. 523; *Hoover v. Smith,* 96 Md. 393, 396; *Cushman v. Arnold,* 185 Mass. 165; *Rock River Paper Mill Co. v. Fisk,* 47 Mich. 212; *King v. King,* 1 Watts & S.

(Pa.) 205; *Collier's Will*, 40 Mo. 287; *Robert v. Corning,* 89 N. Y. 225; 1 Jarman on Wills, Sec. 763; *Beatty's Admr. v. Montgomery,* 21 N. J. Eq. 324; *Perkins v. Collins,* 3 N. J. Eq. 482, 489.

In the note to *Schackley v. Homer,* (Neb.) 55 L. R. A. (N. S.) 1050, the annotator, after citation of cases, states the rule as follows:

"If * · * * it appears that the future gift is only postponed in order to let in some other interest, or as it is commonly expressed, for the benefit of the estate, the interest is vested notwithstanding, although the enjoyment is postponed."

In *Scofield v. Olcott,* 120 Ill. 382, 374, the court, in applying the rule, says that estates in remainder vest at the earliest period possible, unless a contrary intention on the part of the testator is clearly shown. Where it is a remainder after a life estate, it is regarded as a vested remainder, and the possession only is postponed.

The Pennsylvania court, considering a will which gave a life estate to the widow, and thereafter to be divided among children, says:

"Where the enjoyment of an entire fund is given in fractional parts at successive periods which must eventually arrive, the distinction between time annexed to the payment and time annexed to the gift becomes unimportant. In such cases, it is well settled that all interests vest together." *King v. King,* 1 Watts & S. (Pa.) 205.

Where a devise provided for a trustee, with directions to sell the property after the decease of the widow, and divide the proceeds "between my children," and, as in the case at bar, one of the children predeceased the widow, it was held that the legacies became vested at once upon the death of the testator. *Price v. Watkins,* 1 Dallas (U. S.) *8 (1 L. Ed. 14). Where the will provided, among other things, that the remainder in certain property, after the

death of all of the testator's children and the arrival of his youngest grandchild at the age of twenty-one years, "shall be inherited and equally divided between my grandchildren," there being no other words of gift except as was implied in the direction to divide, it was held that the grandchildren took a vested remainder at the death of the testator. The court says:

"Words directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the will, to relate to the beginning of enjoyment by the remaindermen and not to the vesting of the title in them. For instance, under a devise of an estate, legal or equitable, to testator's children for life, and to be divided upon or after their death among his grandchildren in fee, the grandchildren living at the death of the testator take a vested remainder at once, subject to open and let in afterborn grandchildren, although the number of grandchildren who will take, and consequently the proportional share of each, cannot, of course, be ascertained until the determination of the particular estate by the death of their parents (citing cases). So a direction that personal property shall be divided at the expiration of an estate for life creates a vested interest. *Shattuck v. Stedman,* 2 Pick. (Mass.) 467. * * * The direction that, if any grandchild shall have died before the final division, leaving children, they shall take and receive *per stirpes* the share of the estate both real and personal which their parent would have been entitled to have and receive if then living, was evidently intended merely to provide for children of a deceased grandchild, and not to define the nature, as vested or contingent, of the previous general gift to the grandchildren; and its only effect upon that gift is to divest the share of any grandchild deceased leaving issue, and to vest that share in such issue." *McArthur v. Scott,* 113 U. S. 340 (28 L. Ed. 1015).

In *Cropley v. Cooper,* 86 U. S. 167 (22 L. Ed. 109), we have another case in which the testator directs the sale of his property after the death of his widow and the distribution of the proceeds among his children. Here, also, the only words of gift are in the direction to sell and divide, and the court, after holding that the direction to sell and divide worked an equitable conversion of the real estate into personalty as of the time of the testator's death, says:

"A bequest in the form of a direction to pay at a future period, vests an interest immediately if the postponement be for the convenience of the estate or to let in some other interest. The payment of debts is an instance of the former, and a prior temporary provision for some other person, as for Elizabeth Cropley in this case, is an instance of the latter. In all such cases it is presumed that the testator postponed the time of enjoyment by the ultimate legatee for the purpose of the prior devise or bequest (citing *Halifax v. Wilson,* 16 Ves. 171; *Leeming v. Sherratt,* 2 Hare 14; *Packham v. Gregory,* 4 Hare 396; *Winslow v. Goodwin,* 7 Metc. 363; *White v. Curtis,* 12 Gray 54; *Tucker v. Ball,* 1 Barb. 94; *Barker v. Woods,* 1 Sand. Ch. 129; *Thomas v. Anderson,* 6 C. E. Green 22; *McGill's Appeal,* 61 Pa. St. 47; *Tayloe v. Mosher,* 29 Md. 443; *Brent v. Washington,* 18 Gratt. 526; *Fuller v. Fuller,* 5 Jones Eq. 223; *Roberts v. Brinker,* 4 Dana 570; *Rawlings v. Landes,* 2 Bush. 158). A devise of lands to be sold after the termination of the life estate given by the will, the proceeds to be distributed thereafter to certain persons, is a bequest to those persons, and vests at the death of the testator. *Fairly v. Kline,* 2 Penning. 322; *Reading v. Blackwell,* 1 Bald. 166; *Rinehart v. Harrison,* 1 Bald. 177; *Loftis v. Glass,* 15 Ark. 680."

These quotations fairly reflect the holdings in all of the cases to which we have called attention, on this branch of the cases under consideration. Indeed, after a somewhat extended research, we have found no case whatever in which

the soundness of that rule is questioned or denied. It is true that here and there a precedent may be found in which the distinction we have pointed out has not been noticed, but in such cases the omission would seem to have occurred simply because counsel failed to raise or argue the question.

Nor does this court furnish any exception to the rule of the authorities we have above cited. See *Olsen v. Youngerman*, 136 Iowa 405; *Shafer v. Tereso*, 133 Iowa 342; *Blain v. Dean*, 160 Iowa 708; *Beaver v. Ross*, 140 Iowa 154; *Haviland v. Haviland*, 130 Iowa 611; *Callison v. Morris*, 123 Iowa 297; *Ross v. Ayrhart*, 138 Iowa 117; *Scott v. Scott*, 132 Iowa 35; *Putbrees v. James*, 162 Iowa 618; *O'Conner v. Halpin*, 166 Iowa 101; *Sleeper v. Killion*, 182 Iowa 245; *Lingo v. Smith*, 174 Iowa 161. In each of these cases it will be found that the testator, having first devised a life estate (in one case an estate for years), proceeds to provide that, after the expiration of such estate, the property shall be divided, or sold and the proceeds divided, between his children or other designated beneficiaries, and in each and every one we have held that the postponement of the division, or sale and division, has no effect to render the devise of the remainder contingent, but that such interest vested at once upon the death of the testator. In principle there is no difference, so far as the vesting of the right is concerned, between a direction to divide the property and a direction to sell the property and divide the proceeds. A direction to sell and divide does no more than to work an equitable conversion of the real property as of the time of the death of the testator, and the gift, technically speaking, becomes a bequest instead of a devise; but the right of the beneficiary therein vests alike in either case. Unless, then, we are prepared to say that we have been wrong in all our decisions above cited, we must hold that the trial court erred in ruling that the children of the testator, to whom he devised the remainder

over after the life estate given to his widow, took no vested interest in his estate.

To hold those interests vested is not inconsistent with any recognized definition of a vested remainder, nor can there be found any recognized definition under which they can be classed as contingent remainders. It is argued that cases like *McClain v. Capper,* 98 Iowa 145, *Olsen v. Youngerman,* 136 Iowa 404, *Birdsall v. Birdsall,* 157 Iowa 363, *Baker v. Hibbs,* 167 Iowa 174, *Wilhelm v. Calder,* 102 Iowa 342, *Taylor v. Taylor,* 118 Iowa 408, and *Kierulff v. Harlan,* 150 Iowa 671, 675, support the ruling of the trial court. A little examination of these cases will disclose that not one of them is authority for holding that the remainder provided for in this will is contingent. The *Youngerman* case is largely relied upon because of its discussion of the "divide and pay-over" rule, but the question there decided had no direct reference to the law of remainders. In that case, the appellants sought to terminate a trust which the testator had established for the benefit of a son and the son's children. The provision was in the nature of a spendthrift trust, and provided that the principal trust fund was to be divided between the children at the death of the son. Some of these named beneficiaries sought to have the trust dissolved and the fund distributed while the son still lived, and it was decided that they acquired no right to such distribution until the time expressly fixed in the will,—a conclusion which was manifestly right. Such holding did not necessarily turn upon the question whether the children's rights were vested or contingent, for on neither theory could they demand possession until the time fixed for the termination of the trust arrived. And it should not be overlooked that, in discussing the "divide and pay-over" rule, the court, on page 410 of that opinion, expressly recognizes the rule which we follow in the present case, and in support of which we have cited many precedents, that, "where the

postponement of payment is merely for the purpose of let-
ting in an intermediate estate," the right is vested. The
*Youngerman* case is, therefore, a precedent upholding the
contention of the appellant, rather than that of the appel-
lee. In *Wilhelm v. Calder,* the will expressly provides that
the property devised shall be held by the executor until the
youngest surviving child becomes of age, and then be "di-
vided equally between my said children *then living,*" a pro-
vision so clearly differing from the one in the will now
before us that it is a matter of surprise that it should be
here quoted as an applicable authority. In *McClain v. Cap-
per,* the court construed a will which provided for no life
estate, but directed that, when his youngest child should
arrive at full age, the property should be divided between
the testator's named children *or survivors of them;* and we
held that this reference to survivors indicated an intention
to confine the right to share in the division to those who
should *then be living.* In *Taylor v. Taylor,* we find prac-
tically the same question which was decided in *Wilhelm v.
Calder.* The will, after creating a life estate in the widow,
directed the remainder to be equally divided between "my
children *or* their heirs as the law directs." The construc-
tion was made to turn solely upon the effect to be given the
word *"or,"* and it was held that it could not properly be
construed as "and," and that, giving it its natural disjunc-
tive effect, the words, "or their heirs" must be treated as
words of purchase, and (to use the language of the opin-
ion) that the persons who take the remainder "are such
of the children as might be *living at the time* of distribu-
tion, and the heirs of such as might have predeceased."
While the writer of this opinion is inclined to the view that
the word "or" as used in the Taylor will could well have
been construed as "and," yet, if the correctness of that de-
cision be fully conceded in all respects, it serves only to
classify that case with those in which the devise is made to

such devisees as shall be "then living" at the date of the distribution, and deprives it of any application to the case now in hand, which contains no such restriction, nor anything which is its equivalent. In *Birdsall v. Birdsall,* we have again a case where the will provides a life estate, and in express words devises the remainder "to the children of Walter Gilson Birdsall who shall be living at the time," and this, we held, confined the gift to those children who survived their father. No other conclusion was reasonably possible, but the case has no likeness to the one before us. In *Baker v. Hibbs,* the only question decided arose under a provision of the will which, directing a division of the property after the expiration of the widow's life estate, named among the distributees "the living heirs of the late P. W. Hibbs." When the will was drawn, P. W. Hibbs was dead, survived by two children, both of whom died before the lapse of the life estate; and it was held that, as this language clearly had reference to the heirs living when the division became due, the right to share in such division never vested in the two who died before that time arrived. The case of *Horner v. Haase,* 177 Iowa 115, is of the same character, and the will there provides for distribution between the children "who may be living at that time." And the same is true in *Kiernlff v. Harlan.* Indeed, our decisions will be searched in vain for any ruling which holds that the right of a child to share in the remainder of which he is named a beneficiary is rendered contingent by a postponement of the time of division or payment to let in a life estate, except where there is an express or clearly implied limitation of the right to share in such remainder to those who shall "then be living," or other equivalent phrase.

Our attention is called to the recent case of *Fulton v. Fulton,* 179 Iowa 948, as tending to sustain the opposite conclusion. But a little examination makes it perfectly clear that the devise in that case is materially unlike the

one now before us. There, the gift was to the children, or their heirs, or the *survivors* of them, thus bringing it strictly within the class of cases in *McClain v. Capper* and *Taylor v. Taylor*, to which we have already made reference; while the devise in this case is direct to the three daughters, and provides for no right of survivorship between them. It is, therefore, to be said that the *Fulton* case was properly decided, but it is not authority which controls the decision of the present case. The rule which we here apply, and the question whether a remainder which is postponed to let in a life estate becomes vested at the death of the testator, was not there raised, nor argued, nor considered, nor decided. The discussion, so far as this feature of the case is concerned, could well end here; but, in view of the insistence of counsel that the rule by which the postponement of the division and distribution of devised property to let in a life estate will not prevent the vesting of a remainder where there are no direct words of gift except as the same may be expressed in the direction to pay over, we call attention to cases which conclusively determine that the argument is opposed to the overwhelming weight of authority. Indeed, we may say with confidence that, outside of the states of New York and Wisconsin, the decisions are practically unanimous in adhering to the rule as we here apply it, and that a direction to pay over the remainder after the death of the life tenant, is treated as a sufficient expression of an intent to give a vested estate therein. And in neither of the two states mentioned have the courts consistently adhered to the opposite conclusion. It may be added that, in both of these states, the question is to some degree complicated by the existence of statutes, the effect of which is, perhaps, to modify or prevent full application of common-law principles. In addition to the authorities already cited, we note the following, all of which are in point: *Herbert's Exr. v. Post*, 26 N. J. Eq. 278;

*Wintermute v. Snyder,* 3 N. J. Eq. 489; *Price v. Watkins,* 1 Dallas (U. S.) *8 (1 L. Ed. 14); *In re Oertle,* 34 Minn. 173 (24 N. W. 924); *Smith v. Smith,* 116 Wis. 570 (93 N. W. 452); *Moulton v. Chapman,* 108 Me. 417 (81 Atl. 1007); *White v. Curtis,* 12 Gray (Mass.) 54; *Matter of Lotz,* 92 Misc. Rep. 683 (157 N. Y. Supp. 685); *Blume v. Kimball,* 222 Mass. 412; *Matter of Finck,* 168 App. Div. 135 (153 N. Y. Supp. 534); *Ingersoll v. Ingersoll,* 80 Misc. Rep. 299 (142 N. Y. Supp. 217); *Higgins v. Beck,* (Me.) 100 Atl. 553; *Nelson v. Nelson,* 36 Ind. App. 331 (75 N. E. 679); *Whitman v. Huefner,* 221 Mass. 265 (108 N. E. 1054); *Lantz v. Caraway,* 180 Ind. 484 (103 N. E. 335); *Abbott v. Lewis,* 77 N. H. 94 (88 Atl. 98); *Blaine v. Dow,* 111 Me. 480 (89 Atl. 1126); *Selby v. Morgan,* 6 Munford (Va.) 156; *Arnold v. Arnold,* 50 Ky. 81; *Snow v. Durgin,* 70 N. H. 121; *Bates v. Spooner,* 75 Conn. 501; *Potter v. Nixon,* 81 N. J. Eq. 338 (86 Atl. 444); *Lane v. Lane,* 8 Allen (Mass.) 350; *Fisher v. Banta,* 66 N. Y. 468, 476; *Tazewell v. Smith,* 1 Randolph (Va.) 313 (10 Am. Dec. 533); *Bentley v. Long,* 1 Strob. Eq. (S. C.) 43 (47 Am. Dec. 523); *Armstrong v. Barber,* 239 Ill. 389; *Carter v. Carter,* 234 Ill. 507; *Crossley v. Leslie,* 130 Ga. 782; *Loring v. Carnes,* 148 Mass. 223 (19 N. E. 343); *Rubencane v. McKee,* 6 Del. Ch. 40 (6 Atl. 639); *Thomman's Estate,* 161 Pa. St. 444 (29 Atl. 84); *Hawkins v. Bohling,* 168 Ill. 214 (48 N. E. 94); *In re Snyder's Estate,* 180 Pa. St. 70 (36 Atl. 420); *Appeal of Reed,* 118 Pa. St. 215 (11 Atl. 787).

Without any extensive review of the foregoing cases, we quote from a few the rule as formulated by the courts. In *Scofield v. Olcott,* 120 Ill. 362, the Illinois court states it as follows:

"But, even though there be no other gift than in the direction to pay or distribute *in futuro,* yet, if said payment or distribution appear to be postponed for the convenience of the fund or property, as where the future gift is post-

poned to let in some other interest,   *   *   *   the gift in remainder vests at once, and will not be deferred until the period in question."

   In *Martin v. Cook,* 129 Md. 195 (98 Atl. 489), the Maryland court refuses to apply the rule which postpones the vesting of a remainder, to a case where there were no words of gift except in the direction to divide after the death of the life tenant, and states the applicable rule to be that, "if the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested at the death of the testator." In *Herbert's Exr. v. Post,* 26 N. J. Eq. 278, and in *Post v. Herbert's Exr.* 27 N. J. Eq. 540, the rule is stated in substantially the same terms.   .

5. REMAINDERS:
contingent re-
mainders:
devise to
testator's
children:
presumption.

   It is also a well-established rule that where, after devising a life estate to his widow, the testator provides a remainder to his children, the presumption or inference that he intends to give the latter a vested right is much stronger than where the remainder is created for the benefit of persons having no natural claims upon his bounty. *Whitman v. Huefner,* 221 Mass. 265; *Morse v. Ballou,* 109 Me. 264 (83 Atl. 799).

   And still again, it is held that, where the rule which prevents a vesting until the time of payment arrives would otherwise be applicable if the gift or devise were made to a class, the court will hesitate to apply it if the beneficiaries are described by their individual names. *Bryant v. Plummer,* 111 Me. 511 (90 Atl. 171, 173) ; *Moulton v. Chapman,* 108 Me. 417 (81 Atl. 1007) ; *Morse v. Ballou,* supra.

   The authorities classing such gifts as vested estates are so numerous and so parallel in all essential features to the instant case that it is unnecessary for us here to re-enter the field of debate upon the strict technical definition of vested and contingent remainders.

However differently the rule may be expressed, and whatever exceptions may be found in, or taken to, the New York statutory rule, there is a well-settled or commonly accepted doctrine as to one of the distinguishing features of a vested remainder. For example, beginning with Mr. Fearne, whose great work is the fountain of learning on this subject, to which all investigators finally turn, he says that the distinguishing characteristic of a vested remainder is a present capacity to take effect in possession if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines. *Fearne's Remainders,* 216. This has been adopted by the Supreme Court of the United States (*Croxall v. Shererd,* 72 U. S. 268), and by the courts of last resort in Massachusetts (*Brown v. Lawrence,* 3 Cush. 397) ; in Connecticut (*Hudson v. Wadsworth,* 8 Conn. 348) ; in New Jersey (*Van Dyke's Admr. v. Vanderpool's Admr.,* 14 N. J. Eq. 206, *Price v. Sisson,* 13 N. J. Eq. 168, 176) ; in Indiana (Bruce v. *Bissell,* 119 Ind. 525) ; in Florida (*Kingsley v. Broward,* 19 Fla. 722) ; in Nebraska (*Schuyler v. Hanna,* 31 Neb. 307; in South Carolina (*Bentley v. Long,* 1 Stroth. 43) ; in New York (*Williamson v. Field,* 2 Sanf. Ch. 533, *Hawley v. James,* 5 Page Ch. 318) ; in Wisconsin (*In re Bacon's Estate,* 123 N. W. 262, *Scott v. West,* 24 N. W. 161) ; in Illinois (*Chapin v. Crow,* 147 Ill. 219) ; in North Carolina (*Starnes v. Hill,* 112 N. C. 1) ; in Kentucky (*Mercantile Bank of New York v. Ballard,* 83 Ky. 481, *Moore's Admr. v. Sleet,* 113 Ky. 600) ; in Kansas (*Bunting v. Speek,* 41 Kan. 424) ; in New Hampshire (*Wood v. Griffin,* 46 N. H. 230) ; in Virginia (*Wallace v. Minor,* 86 Va. 550) ; in West Virginia (*Chipps v. Hall,* 23 W. Va. 504, 515) ; in Missouri (*Patrick v. Blair,* 119 Mo. 105) ; in Alabama (*Smaw v. Young,* 109 Ala. 528) ; in Maryland (*Kemp v. Bradford,*

61 Md. 335); in Maine (*Woodman v. Woodman,* 89 Me. 128).

Without pursuing these citations further, it may be said that, in several other jurisdictions, the definition of remainders is fixed by statute in substantially similar terms, and between these and the jurisdictions where the common-law rules have been adhered to with more or less fidelity, the distinction between the two classes of remainders, as heretofore stated, has had the approval of substantially every court in the United States; and, if there be any proposition of law which can be said to have become a rule of property, surely this is one. Here and there, a case will occasionally be found where a court has pointed out real or supposed exceptions to the rule, but in most instances they do no more than cast doubt upon its absolute universality, and not its general truth and applicability. Without entering at all upon any discussion of the soundness of the exceptions taken to the rule, and, for the purposes of this opinion, conceding their propriety, it is perfectly clear that this case falls within the general rule, and not within the scope of any of the exceptions which have been taken thereto.

The will before us shows beyond all question the purpose of the testator to give his entire estate (except one small legacy of $100) to the immediate natural objects of his bounty, his widow and children. In so doing, he adopted the very common plan of giving the full use of all his property to his wife for life, and the remainder to his children. There is nothing shown in the family relations or in the character or capacity of the children to induce him to withhold the vesting of the remainder until the widow's death. When the will became effective, the fee, or ultimate right of property, subject to the life estate, must have passed to someone. It did not, of course, vest in the life tenant. No trust was created calling for a trustee to

receive it pending final distribution. No beneficiaries other than his three daughters were designated to receive such remainder. Their rights under the will became fixed at his death. Since they had the right and capacity to succeed to the possession and enjoyment of the property whenever the life estate should cease, it was a right vested in them as tenants in common of the remainder; and, there being no right of survivorship as between the sisters, the independent share or interest of Mrs. Patterson therein descended to her representatives, and did not inure to the benefit of the other tenants in common by virtue of any provision of the will.

It follows that the judgment below will be reversed, and the cause remanded to the district court for a decree in harmony with this opinion.—*Reversed and remanded.*

GAYNOR, C. J., LADD, EVANS, PRESTON, SALINGER, and STEVENS, JJ., concur.

EVANS, J. (specially concurring). This opinion holds that the terms of the will created no contingency or uncertainty as to the devisees taking thereunder. The necessary effect of this holding is to treat as surplusage the provision relating to the "heirs" of the devisees. I think this is proper. If such provision had been wholly omitted, the legal effect of the will would still be the same, under Code Section 3281. On that ground, I concur in the result.