James O'Connor, Plaintiff, v. P. H. Halpin, Defendant.

**Wills:** VESTED REMAINDER: DOWER.  Where a will devised all of testator's estate to his widow for life, with the remainder upon her death to his children, the children were vested with the title and ownership of the real property immediately upon the death of the testator, subject only to the life estate of the widow; and were possessed of the same within the meaning of Code section 3366, relating to dower; and upon the death of one of the children prior to the death of the widow, and while she was still in the possession and enjoyment of the life interest, the surviving spouse of such deceased child was entitled to dower therein.

*Appeal from Dubuque District Court.*—HON. ROBERT BONSON, Judge.

FRIDAY, MAY 15, 1914.

ACTION to establish a dower interest in land and for partition.  Decree for the plaintiff.  Defendant appeals. —*Affirmed.*

*Matthews & Chalmers* and *Mullany & Stuart,* for appellant.

*Fitzpatrick & Frantzen,* for appellee.

GAYNOR, J.—On the 26th day of September, 1912, the plaintiff filed in the district court of Dubuque county, the following petition:

Par. 1.  That plaintiff and defendant are both residents of the city of Dubuque, Dubuque county, Iowa.

Par. 2.  That at the time of his death, one Michael Halpin was the owner of the southerly one-half of lot 574 in the city of Dubuque, Dubuque county, Iowa.  That said Michael

Halpin died on the 4th day of November, 1884, leaving a last will and testament which was duly admitted to probate, wherein said Michael Halpin bequeathed to his daughter, Katie Halpin, the southerly one-half of lot 574 in the city of Dubuque, Iowa, subject to a life estate in Mary Halpin, widow of said Michael Halpin. A copy of said last will and testament is hereto attached, marked 'Exhibit A' and made a part hereof.

Par. 3. That Katie Halpin and this plaintiff were married subsequent to the death of said Michael Halpin.

Par. 4. That under and by virtue of said last will and testament of Michael Halpin the said Katie Halpin, in her lifetime, and while the wife of this plaintiff, was the owner of the fee title to the southerly one-half of said lot 574 in the city of Dubuque, Iowa, subject to a life estate of Mary Halpin created under the last will and testament of Michael Halpin above referred to as Exhibit A.

Par. 5. Plaintiff further avers that said Katie O'Connor, née Halpin, died on the 8th day of April, 1895, without leaving any issue, but left surviving her this plaintiff as her husband, and Mary Halpin, her mother, as her sole and only heir. That upon the death of said Katie O'Connor, née Halpin, this plaintiff, James O'Connor became the owner of an undivided one-half of said above-described property, subject to the life estate in Mary Halpin, and Mary Halpin, mother of said Katie O'Connor, née Halpin, became the owner of an undivided one-half of said above-described real estate, and was also the owner of a life estate in all of said property.

Par. 6. That Mary Halpin died in Dubuque county, Iowa, on the 16th day of January, 1912, leaving a last will and testament, which has been duly admitted to probate by this court. That by the terms of said last will and testament, said Mary Halpin bequeathed whatever interest she had in the southerly one-half of lot 574 to the defendant, P. H. Halpin. A copy of said last will and testament of Mary Halpin is hereto attached, marked 'Exhibit B' and made a part hereof.

Par. 7. Plaintiff further avers that he is now the absolute and unqualified owner of an undivided one-half of the southerly one-half of lot 574 in the city of Dubuque, Iowa, and said P. H. Halpin is the owner of an undivided one-half of said property.

Wherefore plaintiff prays judgment against the defend-

ant confirming the shares of the respective parties, as herein set out, and asks that judgment be entered accordingly, and that said property be ordered sold and referees appointed by the court to make such sale, and the proceeds thereof divided among the respective parties according to their interests.

To which petition, plaintiff attached a copy of the will alleged to have been made by Michael Halpin, and which, so far as material to this controversy, is as follows:

I give and bequeath to my beloved wife, Mary Halpin, all the property of which I may die seised, whether same be real, personal or mixed, all personal property and the rents and profits of the real estate to belong to her absolutely and in her own right, she to have the control and management of the real property during the term of her natural life.

After the death of my wife, I desire that all the real estate of which I may die seised, shall go to my children as follows:

To my daughter, Katie Halpin, the southerly one-half of said lot 574.

Attached was a copy of the will alleged to have been made by Mary Halpin, widow of Michael Halpin, which, so far as material, is as follows:

I, Mary Halpin, widow of Michael Halpin, deceased, of the city and county of Dubuque, Iowa, do hereby make and declare the following as my last will and testament.

First.  It is my wish and desire that my just debts, if any, expenses of last sickness and funeral expenses be first paid out of my estate.

Second.  I give, devise and bequeath to my beloved son P. ,H. Halpin, the following described real estate: The northerly one-half of lot 574 in the city and county of Dubuque, Iowa, with the improvements and buildings thereon situated; also the *southerly one-half of lot 574* in the city of Dubuque, Iowa, and any interest, right or title to any other real estate that I may die seised of, possessed of, or entitled to, wheresoever situated.  It being my intention herein to bequeath and devise to my said son, P. H. Halpin, all real estate of which I may die seised of, possessed of, or entitled to.

To the petition so filed, the defendant, P. H. Halpin, filed a general equitable demurrer, alleging that the facts stated in the petition do not entitle the plaintiff to the relief demanded. This demurrer was by the court overruled, and, defendant electing to stand upon his demurrer, the decree was entered as prayed in the petition. From the ruling on the demurrer and the decree, defendant appeals.

The demurrer admits all the facts well pleaded, and therefore, in the consideration of this case, we must assume that the facts are as alleged in plaintiff's petition. From this petition we extract the following: First. That Michael Halpin in his lifetime was the owner of the southerly one-half of lot 574 in the city of Dubuque; second, that he died leaving a last will and testament, which was duly admitted to probate; third, that by the terms of the will, he gave to his wife, Mary Halpin, who survived him, a life estate or interest in the property above described; fourth, that he devised the said property to said Kate Halpin subject to said life estate; fifth, that Kate Halpin and the plaintiff were married subsequent to the death of Michael Halpin; sixth, that the plaintiff's wife, Kate Halpin, died on the 8th day of April, 1895, without issue, leaving surviving her the plaintiff; seventh, that Mary Halpin, wife of Michael Halpin, died on the 16th day of January, 1912, leaving a last will and testament, which was also admitted to probate, by the terms of which she bequeathed to defendant the above-described property.

The contention of the defendant is that, as Kate O'Connor, née Halpin, died before her mother, Mary Halpin, and while the mother was *in the possession* of the estate created in the will, the said Kate O'Connor never *possessed* said property during her life, and that therefore her husband, James O'Connor, is not entitled to dower therein. The rights of these parties are to be determined by the statutes in force in this state at the time their rights accrued.

1. WILLS : vested remainders: dower.

Section 3366 of the Code provides: ''One-third in value of all the legal or equitable estate in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him. The same share of the real estate of a deceased wife shall be set apart to the surviving husband.''

Section 3379 provides: ''If the intestate leaves no issue, one-half of the estate shall go to the parents, and the other half to the spouse; if no spouse, the whole shall go to the parents.''

Section 2912 provides: ''All persons owning real estate not held by adverse possession shall be deemed to be seised and possessed of the same.''

Section 2917 provides: ''Estates may be created to commence at a future date.''

This case turns largely upon the meaning to be given the word ''possessed'' appearing in section 3366. What did the Legislature mean in saying, ''There shall be set off to the survivor, as his or her property, one-third in value of all the *legal* or *equitable estate* in real property *possessed* by the other during marriage?'' A solution of this question is essential to a disposition of the rights of the parties in this case. It is not contended, nor could it be contended, that Mary Halpin, wife of Michael Halpin, under his will took more than a life estate in the property in controversy. The property in controversy was specifically devised to the plaintiff's wife, Kate Halpin, subject to the life estate given to her mother, Mary Halpin. She then became the owner of this real estate, under and by the terms of the will, subject to the life estate created in her mother. It is true she died before her mother, and therefore never came into the actual physical possession of the property.

Under the statutes above, it has been held by this court that, a will devising property to a wife for her exclusive use

and benefit during her life, and after her death to be equally
divided between testator's children, the remainder vested in
the children immediately upon the death of the testator. Or,
in other words, that the remainder was vested absolutely in
the parties named upon the death of the testator, the enjoy-
ment, however, being postponed during the existence of the
life estate, or during the life of the life tenant.

We think the case at bar is ruled by *Haviland v. Havi-
land*, 130 Iowa, 611. In the *Haviland* case, the will pro-
vided:

I give and bequeath to my wife, Mary C. Haviland, all my
. . . real estate . . . for her exclusive use and benefit
during her life, and after her death . . . what remains
to be equally divided among my children. (The court said:)
The appellants . . . contend that, if the will created a
life estate only in Mary C. Haviland, no interest vested in the
children until the termination of the life estate, and, Elmer
E. Haviland having died before his mother, that the plaintiff
is entitled to nothing as his surviving widow. If the remainder
after the particular estate of Mary C. Haviland was vested
absolutely at the death of the testator, and the time of dis-
tribution and enjoyment was alone postponed, the interest
which the plaintiff now claims as the surviving widow of Elmer
E. Haviland was properly decreed to her, but . . . if the
estate itself did not vest in the children until the termination
of the life estate, she is entitled to nothing, because of her
husband's death before the death of his mother, and hence
before the termination of her estate. . . . The will gives
the wife a life estate only in express terms, and then provides
that after her death the remainder shall be divided among his
children.

The holding of this case is that as the children became
vested, immediately upon the death of the testator, with an
estate in the property devised, subject only to the life estate,
the effect of the intermediate estate was to postpone the en-
joyment of the thing devised. By the devise, the testator
created two successive estates in the land; the future or ulti-

mate ownership being given to one, and a particular estate for life given to the other. See, also, *Archer v. Jacobs,* 125 Iowa, 467; *Hatton v. Wheaton,* 158 Iowa, 460; *Ross v. Ayrhart,* 138 Iowa, 117.

Applying the statutes, hereinbefore cited, to the case at bar, in the light of the decisions heretofore made by this court, we find that, immediately upon the death of Michael Halpin, his daughter, Kate Halpin, became vested with the title to the property in controversy, subject to the life estate created in favor of her mother. She, therefore, became the owner of the real estate, subject to the life estate in her mother.

Section 2912 provides that all persons owning real estate shall be deemed to be seised and *possessed* of the same where it is not held by adverse possession. There is no claim that the mother held the estate adversely to the rights of her daughter, Kate Halpin, under this will. It follows then that, title having passed to her by the will, she became the owner of the legal title subject to the life estate, and, being the owner, under the statute is deemed to be seised and possessed thereof. The word "possessed," as used in section 3366, relates to the estate in the property, and not to the property itself. Under the old common law, possession was essential to seisin. Thus there was livery of seisin, and seisin was essential to the right of dower, and seisin had reference to the estate of the person seised, and not to the thing in which such a state exists, and ordinarily, at common law, the word "seisin" was applicable to freehold only, and, in speaking of seisin we spoke of a freehold interest in land, and seisin meant the possession of at least a freehold. It meant actual physical possession of the freehold, either by himself, or agent, or by construction of law. There is a distinction between possession and seisin, although possession is essential to seisin. It is that possession of a freehold which, at common law, was created by livery of seisin. As to a freehold, seisin and ownership meant practically the same thing. There may be

possession without seisin, but cannot be seisin without posses-
sion, either actual or constructive. At common law, and
under many of the decisions of the Supreme Courts of this
country, seisin in law signified a legal right to the possession
of a freehold. The old doctrine of corporeal investiture has
no force now, and a deed is a seisin in law.

We have then this state of facts: The will gave to Mary
Halpin, the mother, a life estate in the property in con-
troversy. It gave to Kate Halpin, the fee subject to the life
estate. This passed to her immediately upon the death of her
father. She was possessed of this estate, with the right to
alienate it at the time of her death, subject only to the life
estate in her mother. She was therefore, in a legal sense, the
owner of the property, subject to the interest devised to Mary
Halpin. Inasmuch as she was the owner at the time of her
death, she is deemed to be seised and possessed of the same
at the time of her death. It was true that she did not then
have the physical possession of it, nor the right to the imme-
diate enjoyment of the physical property, but she was seised
and possessed of a legal and equitable estate in the same.
This estate upon her death would pass to her legal heirs,
subject to the life estate in her mother. Having died without
legal heirs, one-half of the estate in this property passed
to her mother, and the other half to her husband, as provided
in section 3379 of the Code.

We are cited to many cases from other states in support
of the contention that no title vested in Kate Halpin, at the
time of her father's death, that could pass to her husband,
or in which he had an endowable interest. An examination
of the authorities cited shows us that there are many courts
holding that a husband cannot have curtesy in lands of which
his wife had only a remainder expectant on a prior estate
which did not terminate during coverture. That is, where
the prior estate did not terminate during coverture. An
examination of these authorities satisfies us that the decisions
rest either upon the common law, or upon statutes entirely

different from our own, and therefore are not authority upon the question here for our determination.

We have no occasion to review these authorities, nor would a review of them serve any useful purpose. This case is disposed of under the statutes of this state, and we think rightly so, and the judgment and decree of the court is therefore—*Affirmed.*

Ladd, C. J., and Deemer and Withrow, JJ., concurring.