HENRY E. MURPHY, Appellant, v. JAMES CALVIN MURPHY et al., Appellees.

**DESCENT AND DISTRIBUTION:** Husband Is Not Heir of Wife. A
1   husband, on the death of his wife, ceases to sustain any legal relation to the surviving parents of the wife. In other words, the husband is not one of the "heirs" of his wife. (Sec. 3378, Code, 1897.)

**DESCENT AND DISTRIBUTION:** Fiction in re Descent. Necessarily
2   there is no room for the creation of a fiction—an assumption of a nonexisting fact—as a basis for casting descent, when the statute specifically casts the descent. So held where a wife predeceased her father, and the court was asked, in order to cast a descent to the husband, to entertain the fiction that she lived until after the father died.

*Appeal from Lyon District Court.*—C. C. BRADLEY, Judge.

NOVEMBER 1, 1920.

REHEARING DENIED JANUARY 20, 1921.

ACTION in partition, wherein plaintiff claims a one-third share of the real estate in controversy which his deceased wife, Mary A. Murphy, would have inherited from her father, James Mulhall, had she outlived him. Demurrers to the petition were sustained; and, plaintiff electing to stand upon his petition, the petition was dismissed, and judgment rendered against plaintiff for costs. He appeals.—*Affirmed.*

*Warren H. White, Rinicker & Thomas,* and *Henry E. Murphy,* for appellant.

*Shull, Gill, Sammis & Stilwill, Fisher & Ritter,* and *Jones, Muller & Conway,* for appellees.

PRESTON, J.—1. This action was begun on August 7, 1919. On October 16, 1919, the substituted petition was filed. Defendants James Calvin Murphy and Anna May Murphy are the son

1. DESCENT AND DISTRIBUTION: husband is not heir of wife.

and daughter of Henry E. Murphy, plaintiff, and his deceased wife, Mary A. Murphy. The two children are of age. The defendants other than the said two children filed separate demurrers, and the two children each filed separate demurrers. The plaintiff married Mary A. Mulhall in 1897, and lived with her as her husband until her death, December 29, 1900. She died before the death of either of her parents. She was the daughter of James Mulhall, the owner of the land in question, who died intestate, November 26, 1902. His wife, Ann Mulhall, died intestate in 1905. The deceased James Mulhall left five surviving children, William, James P., John, Louis H., and Frances R. Leonard. In December, 1902, an action for the partition of the real estate of James Mulhall was commenced in Lyon County, wherein it was alleged that Ann Mulhall, as surviving widow of said James, was entitled to an undivided one third, and that John, William, James P., and Frances R. Leonard, were each entitled to an undivided two fifteenths, and that Calvin Murphy and

Anna May Murphy were each entitled to an undivided one fifteenth, these several interests aggregating the whole of the real estate of said James Mulhall. Appellant was not a party to the partition proceeding, but he appeared therein as guardian for his two children, and as such guardian, signed an answer for them, admitting that they, being grandchildren of James Mulhall, and children of the deceased daughter of James, have an interest in the property, but claim that their interest exceeds. two fifteenths, by reason of advancements made by deceased to certain of his sons. A decree was rendered in the partition suit in April, 1904, based upon a stipulation entered into in February of that year, between the five living children of James, his widow, Ann, and the guardian of James Calvin and Anna May Murphy, minor children of appellant and his deceased wife. Under the stipulation and decree, some property received by Ann Mulhall from the estate of her deceased son was to be thrown into the estate of her husband, and distributed as such. Part of the estate was deeded to the son John, in trust for the use of his mother during her lifetime, in lieu of her distributive share, and some other similar provisions. All the estate of James Mulhall, deceased, was partitioned, and certain parts set off to appellees James Calvin and Anna May Murphy, lands in which the plaintiff now claims to have an interest. As guardian of his two children, the appellant joined in and signed the stipulations made by all parties to the partition suit, on which the decree was based. It does not appear in the petition in this case, or in the pleadings in the partition suit, which are set out as exhibits, that, in said partition proceedings, appellant ever asserted or claimed that he was also one of the heirs of James Mulhall, deceased, or entitled to any interest in any of the real estate of which intestate died seized. As guardian of his minor children, appellant took possession of the lands so set off to his children, and rented the lands, supervised the repairing of buildings, and received the rents, up to the year 1917. These acts were done with the knowledge and consent of the other heirs and distributees in the estate of James Mulhall, deceased. On May 14, 1919, plaintiff's son, James Calvin, conveyed, by deeds and mortgages, his interest in certain portions of the land set off to him, to James P. Mulhall, and James P. Mulhall as

executor of the estate of Louis Henry Mulhall, deceased; and, on June 13, 1919, plaintiff's said son conveyed by deed to L. A. and F. A. Mulhall, two of the sons of James P. Mulhall, certain portions of the lands in question; and on July 1, 1918, plaintiff's daughter, Anna, conveyed by trust deed certain portions of the lands in question to M. A. Cox, as trustee for the benefit of the grantor. On May 13, 1919, James P. Mulhall and his wife conveyed by deed to Jacob Ross an undivided half of certain portions of the lands in question, and on the same date, Ross and his wife mortgaged the same portion back to James P. Plaintiff's petition prays judgment confirming the shares of the parties, as he alleges them to be; that partition be made, or the property sold; that the trust deed from Anna to Cox be set aside and canceled; that the deeds from James Calvin Murphy to Mulhall, and from James P. and wife to Ross, and the mortgages before stated, be all set aside and canceled; that a receiver be appointed; and that plaintiff's son and daughter and the other defendants shall account to plaintiff for the rents for the years 1917, 1918, and 1919; and for general equitable relief. The demurrers are on these grounds:

"1.   That the facts stated in plaintiff's amended and substituted petition herein do not entitle him to the relief demanded.

"2.   For that it appears on the face of the petition that Mary A. Murphy, deceased wife of the plaintiff, did not die seized and possessed of a legal or equitable estate in any of the property described or referred to in said petition.

"3.   For that the facts stated in said petition do not entitle the plaintiff to the relief demanded in this: That the said petition and exhibits thereto attached show on their face that plaintiff's wife, Mary A. Murphy, died prior to the death of her parents, James Mulhall and Ann Mulhall, and that she was not possessed of and did not own, at the time of her death, a legal or equitable estate in any of the property described or referred to in said petition and exhibits thereto attached.

"4.   For that it appears on the face of said petition and exhibits thereto attached that Henry E. Murphy, the plaintiff herein, is not an heir of James Mulhall or of Ann Mulhall or of his deceased wife, Mary A. Murphy.

"5. That the petition shows that the cause of action, if any plaintiff had, accrued more than 10 years prior to the commencement of this suit.

"6. For that plaintiff's cause of action, if any he had, is barred by Subdivisions 6 and 7, Section 3447, Supp. Code, 1913.

"7. For that plaintiff was guilty of laches and acquiescence for such length of time as to bar his action, if any he had.

"8. For that plaintiff's said petition and the exhibits thereto attached show that the property has been conveyed and deed recorded for such length of time as to bar plaintiff's action, which was not commenced until August 7, 1920."

Appellant argues somewhat briefly the question as to whether appellant became a tenant in common with the other heirs of deceased; that the partition proceeding in 1902 and 1904 amounts, in law, to an implied parol partition, so far as appellant is concerned, and that he, not having been a party thereto, was not bound; the statute of limitations, and laches. Some of these questions—perhaps all—might come up on a trial on the merits, if the ruling on the demurrer should be reversed. At any rate, the only proposition relied upon and argued by appellees is whether, under Sections 3366 and 3378 of the Code, 1897, plaintiff is an heir, and entitled to a part of the estate; and this is the question most elaborately argued by appellant. We understand counsel for both to concede that this is the decisive point in the case on this appeal. Appellant's proposition, as he states it, and the cases cited in support, are:

"The rule of descent and distribution of the estate of James Mulhall, deceased, is the same in the case of Mary A. Murphy's death before that of her father as it would have been in the case of her death had she survived him. Upon the application of this rule, we determine descent. The operation of inheritance and distribution is precisely the same as it would have been had she lived and died after her father's death. Code of 1897, Sections 3366 and 3378; *Lawley v. Keyes,* 172 Iowa 575; *Bassil v. Loffer,* 38 Iowa 451; *McGuire v. Brown,* 41 Iowa 650; *Neely v. Wise,* 44 Iowa 544; *Moore v. Weaver,* 53 Iowa 11; *Lash v. Lash,* 57 Iowa 88; *Leonard v. Lining,* 57 Iowa 648; *In re Estate of Parker,* 97 Iowa 593; *Purcell v. Lang,* 97 Iowa 610; *Shick*

*v. Howe,* 137 Iowa 249; *Blackman v. Wadsworth,* 65 Iowa 80.''

The first statute cited reads:

''One third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him. The same share of the real estate of a deceased wife shall be set apart to the surviving husband. All provisions made in this chapter in regard to the widow of a deceased husband shall be applicable to the surviving husband of a deceased wife.''

The other section reads:

''Subject to the rights and charges hereinbefore provided, the remaining estate of which the decedent died seized, shall, in the absence of a will, descend in equal shares to his children, unless one or more of them is dead, in which case the heirs of such shall inherit his or her share in accordance with the rule herein prescribed, in the same manner as though such child had outlived its parents.''

Under Section 3366, the plaintiff, having survived his wife, would have been entitled to one third in value, set off in fee, of real property possessed by her, which had not been sold or relinquished. His deceased wife, having deceased prior to her father, was never seized or possessed of the property in controversy, nor of any interest therein. The plaintiff's rights in the real estate of his wife, if she had any, would be the same as his wife's rights in his estate, if he were dead and she the survivor. The right of a widow in the real estate of her husband is substantially a dower, enlarged from a life estate to a fee-simple title. She does not obtain such dower by inheritance from her husband, but by her right, under the statute, in the property, when the property, at any time during marriage, belonged to the husband, unless lost or relinquished. As said, the property in question never became the property of plaintiff's wife. She was never possessed of it, or of any interest therein. The property in question was the real estate of James Mulhall, deceased; and, upon his death, he having several children surviving him, descended, subject to his widow's dower, under the

provisions of Section 3378. There being no will, the property descended ''in equal shares to his children, unless one or more of them is dead [his daughter Mary A. Murphy, the plaintiff's deceased wife, was dead] in which case the heirs of such [Mary A. Murphy] shall inherit his or her share in accordance with the rules herein prescribed, in the same manner as though such child [Mary A. Murphy] had outlived its [her] parents.'' Mary A. Murphy having died before her father, the share of the property that would have descended to her descended, under Section 3378, to her heirs; and clearly the plaintiff can have no interest therein, unless he is one of the heirs of his deceased wife, Mary A. Murphy. The number of cases discussing the meaning of the word ''heirs'' is multitudinous. At common law, an heir is he upon whom the law casts an estate of inheritance, immediately upon the death of the ancestor. Ordinarily, in the absence of a statute fixing inheritable rights, real estate descends to blood relatives. The marriage relation between plaintiff and his wife terminated at her death. At the death of the ancestor, James Mulhall, plaintiff was not the next of kin, speaking of that term in the sense sometimes used, as being equivalent to heir, nor was he ever one of the blood relatives of his wife. It is contended by appellees that plaintiff is not one of the heirs of his deceased wife, and that the question has been settled in this state by the decisions of this court. We think it has. For this reason, we shall not discuss the matter, or review the cases as fully as we would, were it not so. The case of *Blackman v. Wadsworth,* 65 Iowa 80, involved the devise of certain property to Henry M. Blackman, who died before the testator, without issue, leaving a widow and one brother. It was provided by Section 2337, Code of 1873 (now Section 3281), that:

''If a devisee die before the testator, his heirs shall inherit the amount so devised to him unless from the terms of the will a contrary intention is manifest.''

It was held that the surviving brother was heir to Henry M. Blackman, and entitled to the legacy, but that his wife was not an heir. The court said:

''Now we think that it has never been understood that a widow takes from the estate of her husband's father, dying

intestate subsequently to her husband. If she could thus take, it would happen that a woman who had had several husbands, all or all but one of whom had died leaving fathers surviving, might find herself enjoying an extended heirship, for which nothing in her circumstances would seem to call. The widow, upon the death of her husband, sustains no legal relation to his father. * * * If we should hold that the word 'heirs,' as used in Section 2454 [Section 3378, Code, 1897], includes the widow, we think that we should not only surprise the profession, but invalidate numerous titles which had been supposed to be unquestionable.''

The court said further that, in one or two cases, the widow had been called by this court the heir of her deceased husband, but that the question is not as to what she is now called, or might properly be called, but what she was called at the time of the origin of the statute in question, and of a cognate statute. See, also, *Braun v. Mathieson,* 139 Iowa 409.

The last case on the subject to which our attention has been called is *Schultz v. Schultz,* 183 Iowa 920, which holds squarely that, under Section 3378 of the Code, a widow is not one of the heirs of her deceased husband, where, as here, an interest was claimed as the heir of a child who had predeceased an intestate father. The cases are there all reviewed.

2. Appellant contends that, under the statute relied upon, a legal fiction is created, in that it makes a person live, when in fact he does not live: in other words, that plaintiff's deceased wife, though dead, for the purposes of casting descent survived her father. There are certain cases, of course, where a legal fiction is called into operation, and some of the cases cited by appellant illustrate cases where fictions are applied. None of the cases cited are like the instant case, and arise under other statutes. We see no reason for the application of any fiction in the instant case. Fiction is defined as that which is feigned, assumed, pretended; the legal assumption or invention that something is true which is, or may be, false; an assumption of an innocent and beneficial character, made to advance the ends of justice. An-

2. DESCENT AND DISTRIBUTION: fiction *in re* descent.

derson's Law Dictionary 457. See, also, Bouvier's Law Dictionary; 19 Cyc. 514.

We said, in *McKellar v. Harkins*, 183 Iowa 1030, 1043, a bastardy case, referring to the common-law rule, that an illegitimate has no inheritable blood, and is without kin, and without ancestry:

"That a bastard has no inheritable blood is only a legal fiction. Legal fictions have their appropriate uses. They are the stepping stones of the law's reasoning; the parables whereby its principles are illustrated. When its reason fails, the fiction falls. The fiction that a bastard has no inheritable blood has been shorn of its reason in this state by legislation. It remains, therefore, a fiction only. Our legislation has conferred upon the illegitimate the right of inheritance, with appropriate safeguards as to the certainty of paternity. Why, therefore, should we deal with finespun theories of the common law as to inheritable blood?"

A fiction is sometimes called into operation for the purpose of casting the descent, and that is its only purpose in cases of this kind. When a fiction is assumed, it is for an innocent purpose, and in furtherance of justice,—not to do an injustice. A fiction that plaintiff's wife survived her father would not be used to make plaintiff a bigamist, should he remarry after her death. It may not be spread out or extended, but it must be left where the law does, for the one purpose, in this case, of casting descent. Section 3378 of the statute itself determines the descent. Under it, the property, under the circumstances of this case, descends to the heirs. The legislature having determined the matter, the fiction, if there should be any in the absence of the statute, fails. The husband is not an heir. The two children are heirs. We see no reason for invoking a fiction in order that the plaintiff, who is not an heir, shall be given a part of the property which the statute says descends to his two children. Appellant argues that some of the cases, and particularly the *Schultz* case, may be distinguished, for that in the *Schultz* case there were no children. It seems to us that there is greater reason for holding in the instant case that the husband is not an heir, since here there are two children, who are

clearly heirs, and the property descends to the heirs, under the section of the statute last mentioned.

We are of the opinion that the trial court properly sustained the demurrers, and the judgment is—*Affirmed*.

WEAVER, C. J., EVANS and SALINGER, JJ., concur.