CLARENCE F. HANKE, guardian of property of Norman Christen Sannes, a minor, appellant, v. MARY O. BJORGO, individually, as beneficiary and coexecutor of estate of Henry J. Bluhm, deceased, et al., appellees.

No. 52496.

(Reported in 152 N.W.2d 262)

1110

JULY 11, 1967.

Alfred A. Beardmore and T. A. Beardmore, of Charles City, for appellant.

Boyd G. Hayes and Larson & Carr, of Charles City, for appellee.

STUART, J.—Plaintiff, on behalf of his minor ward, brought this action for damages alleging breach of a contract not to make a will. The ward will hereinafter be referred to as plaintiff. He claims his mother, Lenore Sannes, consented to her adoption by Henry J. Bluhm in consideration of his promise to die intestate. The adoption was completed, but Mrs. Sannes predeceased Mr. Bluhm. Thereafter, he executed a will which was admitted to probate. It did not mention plaintiff who would have been his sole heir at law. After a jury, by special interrogatory, found such a contract was entered into in reliance upon Mr. Bluhm's promise not to make a will, the trial court sustained defendants' motion for judgment notwithstanding the verdict on the ground that there was not sufficient evidence to support the verdict other than the testimony of Dr. C. R. Sannes, plaintiff's father and husband of Lenore, and that he was an incompetent witness under the dead man statute, section 622.4, Code of Iowa.

I. We agree with the trial court that Doctor Sannes' testimony is required to make a jury question on the existence of a contract not to make a will. The other evidence establishes that Lenore was reared in the Bluhm home following the death of her parents in 1911 when she was three years old. She was treated like a daughter and acted like one. After she was married she sacrificed her own home life to care for Mrs. Bluhm in her last lingering illness and stayed to keep house for Mr. Bluhm after his wife's death. This evidence supplies a motive

for the adoption, but only Doctor Sannes' testimony provides evidence of the terms of a contract not to make a will. If his testimony cannot be considered, the case must be affirmed.

II. Defendants contend there is not sufficient evidence to make a jury question of a contract not to make a will even with Doctor Sannes' testimony. As we do not agree, we will dispose of this contention before proceeding to the principal issue.

Doctor Sannes testified he received a call from his wife Lenore asking him to come from their home in Madison, Wisconsin, to Charles City, where she was staying with Mr. Bluhm. This occurred on the 31st of March 1945, about two years after Mrs. Bluhm's death. He testified to a conversation that took place between Mr. Bluhm, Lenore and himself after his arrival in Charles City:

"Henry spoke first and he said now, Lenore lived here since she was a baby. I would like to adopt her. If you consent to this adoption she can have everything I have when my term is up. I will not write a will and we will have no feud or argument like we had over Aletha's will. I said to Lenore if that is what you want, and she says yes. I said to Mr. Bluhm, if that is all right with Lenore it is okay with me."

There was testimony of a conversation which took place in Madison in the latter part of April or first part of May 1945 following the adoption:

"Henry again repeated more or less what he told me on the 31st of March. He talked to my sister, my brother-in-law, my mother, and he was very pleased that he had adopted Lenore because it relieved him of whatever friction there would be between the family and now she would inherit everything and he would have no worries.

"Q. Was there any conversation, any remarks at that time about a will? A. He just said he would write no will."

There was a third conversation in Madison on June 2, 1945:
"Well, he said he was very happy now and relieved that he had adopted her and now he wouldn't have to make a will and he had—everything was settled."

We believe the evidence with this testimony was sufficient to raise a jury question of the existence of a contract not

to make a will. See: In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815; Fredrick v. Christensen, 73 S. D. 130, 39 N.W.2d 529; Annotation, 32 A. L. R.2d 370.

III. Defendants' motion for judgment notwithstanding the verdict was sustained on the ground that Doctor Sannes was incompetent to testify as he was entitled to a dower interest in the contract between Mrs. Sannes and Mr. Bluhm and therefore had an interest in the outcome of the case.

The trial court reasoned that plaintiff had a cause of action only if he had an inheritable interest in the contract made by his mother. "If plaintiff had an inheritable interest at the time suit was filed, he also had such an interest at the time of his mother's death. If plaintiff had an inheritable interest, then his father, Dr. C. R. Sannes, was entitled to his distributive share in the contract, and as such at the time of trial had an interest in the contract and was an incompetent witness under section 622.4 of the code."

We are unable to agree with the trial court's conclusion. We believe there is a determinative distinction between an interest in the contract and an interest in Mr. Bluhm's estate. Even if we assume Doctor Sannes had a dower interest in the contract as such, it does not necessarily follow that this makes him an incompetent witness under section 622.4.

"The interest which will make a witness incompetent to testify must be a present, certain and vested interest. Reichart v. Downs, 226 Iowa 870, 285 N.W. 256. We have also said that the test of interest of a witness is that he will either gain or lose by direct legal operation and effect of the judgment * * *." (Citing cases) Schmidt v. Schurke, 238 Iowa 121, 124, 25 N.W.2d 876; Peterson v. Citizens State Bank, 228 Iowa 219, 227, 290 N.W. 546; In re Estate of Willesen, 251 Iowa 1363, 105 N.W.2d 640, 645.

Under the terms of the contract, Doctor Sannes will neither gain nor lose by any judgment entered in this lawsuit. He could acquire no interest in Mr. Bluhm's estate. Under our dower statutes Doctor Sannes, by surviving his wife, was entitled to a one-third interest in the net personal property and legal and equitable estates in real estate "possessed" by her at anytime

during the marriage (subject to qualifications not applicable here). Code of Iowa 1939, sections 11986, 11990, 11991 (now sections 636.1, 636.5, 636.6).

"In O'Connor v. Halpin, 166 Iowa 101, the word 'possessed', as used in this statute, was considered, and it was held that the word 'possessed' relates to the estate in the property, and not to the property itself, and that it is equivalent to 'seized'." Schultz v. Schultz, 183 Iowa 920, 925, 167 N.W. 674; Murphy v. Murphy, 190 Iowa 874, 879, 179 N.W. 530.

In Schultz v. Schultz, supra, a wife sought to obtain a dower interest in land owned by her deceased husband's father at his death. We held that since the son predeceased the father "he had no share in his father's lands, either legal or equitable. As Henry had neither a legal nor an equitable estate in these lands at the time of his death, there was no estate to which the right of the wife, under this statute, could attach. The estate referred to [in the dower statute] must be the estate of which he was legally possessed at the time of his death." (Loc. cit. 925)

Here Doctor Sannes' dower rights depend upon the rights acquired by his wife under the contract. Mr. Bluhm's obligation was to die intestate. Mrs. Sannes acquired no present interest in any of his property by virtue of this contract. He was free to use it or dispose of it in any manner he saw fit as long as he did not dispose of it to defeat his contractual obligations. Hatcher v. Sawyer, 243 Iowa 858, 868, 52 N.W.2d 490; See Powell v. McBlain, 222 Iowa 799, 806, 269 N.W. 883; 94 C. J. S. 864, Wills, section 111(c).

As Mrs. Sannes had no vested rights in Mr. Bluhm's property, and as she preceded him in death, Doctor Sannes had no dower interest therein. Braun v. Mathieson, 139 Iowa 409, 411, 412, 116 N.W. 789; Bird v. Jacobus, 113 Iowa 194, 198, 84 N.W. 1062; Baker v. Syfritt, 147 Iowa 49, 62, 125 N.W. 998. This did not relieve Mr. Bluhm of his contractual obligation to die intestate.

Our authorities are clear that a spouse will not inherit from his wife's father. Plaintiff would inherit all of Mr. Bluhm's property through his mother. Schultz v. Schultz, 183 Iowa 920, 924, 167 N.W. 674; Murphy v. Murphy, 190 Iowa 874,

880, 179 N.W. 530; Theen v. Miller, 250 Iowa 1144, 1147, 96 N.W.2d 734.

 Therefore, as Doctor Sannes did not acquire any interest in Mr. Bluhm's estate by virtue of his dower interest in the contract and as he would not inherit anything from him under the laws of intestacy, he did not have such an interest in the outcome of this action to render him an incompetent witness under section 622.4, Code of Iowa. His natural interest in his son's welfare could properly be considered in connection with the weight to be given his testimony.

IV. Defendants also contend the evidence, including Doctor Sannes' testimony, at most shows a contract between him and Mr. Bluhm rather than his wife and Mr. Bluhm. We believe the evidence sustains broader inferences. It is true Mrs. Sannes and Mr. Bluhm were seeking the doctor's consent at the time the terms were explained, but the jury could infer from all the evidence that Mr. Bluhm and Mrs. Sannes had already reached a tentative agreement. She indicated at that time this arrangement is what she wanted and Doctor Sannes merely agreed not to stand in the way. We do not believe there is merit in this contention. This is also true of defendants' contention there was no meeting of the minds.

For the reasons herein stated, we reverse and remand to the trial court for reinstatement of the jury verdict and judgment thereon.—Reversed and remanded.

All JUSTICES concur except MASON, J., who takes no part.